HAYS, Appellant, *v.* BUZARD et al., Respondents.

(No. 1,885.)

(Submitted May 2, 1904.   Decided July 2, 1904.)

*Water Rights — Conveyances—Appurtenances — Evidence—*
*Findings—Appeal—Review.*

1. Where a person owning a water right, rents land and uses a portion of the water on the land, such use of the water will not, of itself, furnish any ground for the inference that he intended to make his water right or any portion of it appurtenant to the land.

2. A person asserting that a water right and a ditch are appurtenant to certain land must prove that they are appurtenances and must connect himself with the title of the prior appropriator.

3. A deed of land together with all appurtenances, water rights and water ditches to the same belonging, and all the estate, title, interest, claim or demand of the grantor therein, conveys only such water rights as are appurtenant to the land.

4. Evidence examined and *held,* to justify the trial court in finding that a certain water right was not appurtenant to a particular piece of land.

5. The fact that some of the findings of the court are immaterial does not impair the effect of such as are material.

6. In an equity case, the judgment will not be reversed merely on the ground that some irrelevant or immaterial evidence was admitted at the hearing.

7. Where plaintiff in a suit to determine water rights asserted rights under a deed conveying all the appurtenances, water rights and water ditches, and all the interest of the grantor, evidence showing the exclusive use of the water by defendants for ten years, during which time neither plaintiff nor his immediate predecessor asserted any right thereto, justified the conclusion that plaintiff's claim was not well founded.

8. Under Laws of Second. Extraordinary Session 1903, p. 7, authorizing the supreme court to review all questions of fact and of law in equity cases, in a suit to determine water rights, the findings will not be disturbed because of the erroneous admission of evidence, where the remainder of the evidence preponderates in favor of the findings.

*Appeal from District Court, Gallatin County; William L. Holloway, Judge.*

ACTION by Joseph A. Hays against Walter Buzard and another. From a judgment for defendants, and an order denying his motion for a new trial, plaintiff appeals. Affirmed.

*Mr. John A. Luce,* for Appellant.

Up to the time that William Herron deeded to Joseph Herron he was in exclusive possession and occupancy of the three 160-acre tracts, claiming and using the water upon them. The 200 inches of water had not been divided, but was in the nature of an easement in gross. However, upon the sale to Joseph Herron of the northwest quarter of section 20, with the appurtenances and water rights thereunto belonging, there was conveyed with this land as appurtenant thereto sufficient water for the proper irrigation of the 110 acres in cultivation upon said land at that

time, which the court has found to be at least 100 inches. (Civil
Code, Secs. 1510, 1491, 4613; *Lampman* v. *Milks,* 21 N. Y.
505, 507; *Cave* v. *Crafts,* 53 Cal. 135, 137, 140; *Quinlan* v.
*Noble,* 75 Cal. 250; 10 Am. and Eng. Ency. of Law, 2d Ed.,
418-419; *Sparks* v. *Hess,* 15 Cal. 186; *Huttemeier* v. *Albro,*
18 N. Y. 48; *Beattie* v. *Murray Placer Min. Co.,* 15 Mont. 316;
*Tucker* v. *Jones,* 8 Mon. 225; *Sweetland* v. *Olson,* 11 Mont. 27;
*Smith* v. *Hope Mining Co.,* 18 Mont. 432, 438; *Sloan* v. *Glancy,*
19 Mont. 76; *G. F. W. W. Co.* v. *G. N. Ry. Co.,* 21 Mont. 503;
*Farmer* v. *Ukiah Water Co.,* 56 Cal. 11, 14; *Dixon* v. *Schir-
meier,* 42 Pac. 1092; Civil Code, Secs. 1078, 1255; *Crooker* v.
*Benton,* 28 Pac. 953, 954; *Smith* v. *Denniff,* 24 Mont. 27.)

*Messrs. Hartman & Hartman,* for Respondents.

The first division of appellant's argument in his brief is based
entirely on the proposition that when a deed of real estate passes
all the appurtenances thereto belonging also pass unless reserved
in the deed, and the authorities stated in his brief are to that
effect.    We concede the correctness of the legal propositions
stated in that portion of the brief and in the authorities cited,
but we insist that appellant begs the question that was tried,
viz.: Was the 100-inch water right appurtenant to the land
when the deed was made in 1895? If it was, it passed to appel-
lant, and respondents have no case. If it was not, it did not pass,
and appellant has no case.    To argue that appurtenances pass
with a deed conveying the land and its appurtenances is com-
pletely to beg the question.    The difficulty under which appel-
lant labored was his assumption that if the water right was ever
used upon the tract of land it must necessarily become appurte-
nant thereto irrespective of the intentions of the parties owning
the water right or the land.    That this is not the law was clearly
laid down in *Smith* v. *Denniff,* 24 Mont. page 20.    It was there
decided that a water right used upon a tract of land does or does
not become appurtenant to the land according to circumstances.
We submit that on the record appellant entirely failed to dis-
charge the burden of proof upon him to show that the water

right in question was appurtenant to his land; that the evidence shows by a clear preponderance that it not only never was appurtenant to appellant's land, but was never intended so to be, and that for a period of ten years immediately prior to the commencement of the action the respondents had had the exclusive use and control of the two hundred inches of water constituting the water right decreed in the case of *Campbell* v. *Johnson,* and that therefore the judgment of the court below should be affirmed.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to determine plaintiff's right to the use of 100 inches of water in Cotton Wood creek, in Gallatin county, Montana, together with a certain ditch conveying the same to and upon plaintiff's land, to-wit, the northwest quarter of section 20, township 3 south, of range 5 east of the Montana meridian. The defendant Lenora Herron is the owner of the southwest quarter of section 17 of the same township, and the defendant Walter Buzard is the owner of the northwest quarter of the same section. William Herron, the deceased husband of Lenora Herron, in 1878 made a timber culture entry of plaintiff's land. This claim he relinquished in 1881. In 1882 he made a desert entry of it, which was, upon relinquishment by him, canceled by the department in 1885. On the same day Joseph Herron, a brother, made a declaratory statement for it as a pre-emption claim, and finally secured a patent by cash entry in 1887. In 1889 Joseph Herron conveyed it to his brother William Herron by warranty deed, "together with all tenements, hereditaments, appurtenances, water rights and water ditches to the same belonging, and all the estate, title interest, claim or demand of said party of the first part therein." By a similar deed William Herron and his wife, a few days before the death of the former, in 1891, reconveyed to Joseph Herron. In 1892 Joseph Herron and wife conveyed to one John Hays.

In 1895 John Hays and wife, Joseph Herron and wife joining
in the deed, conveyed to plaintiff. These latter three deeds con-
tained a clause substantially the same as that in the deed from
Joseph to William Herron. From 1878 to the time of his death,
William Herron was also in possession of the west half of sec-
tion 17, and cultivating it. The southwest quarter being within
the terms of the grant by the United States to the Northern
Pacific Railroad Company, the title to it was secured by him
by conveyance from that company. He held the northwest quar-
ter under a contract from the railroad company, but, by reason
of a settlement made upon this quarter by one Towne prior to
the taking effect of the grant, it was held by the land department
that it was excluded from the grant and remained open to settle-
ment under the laws of the United States. This holding was
*the result of a contest with the railroad company by Lenora*
Herron after the death of her husband. She was granted a
preference right to enter it as a homestead. This she relin-
quished in favor of the defendant Walter Buzard, a son-in-law,
who obtained patent for it as his homestead. His settlement
was made in 1896, and final entry in 1901. By an order of the
district court of Gallatin county, Lenora Herron had set apart
to her the southwest quarter of section 17 as her probate home-
stead. Subsequently, in 1897, the heirs of William Herron by
deed relinquished all their interest to Lenora Herron, with 200
inches of water in Cotton Wood creek, described as appurtenant
to the land, with the ditches conveying the same. A few days
afterwards Lenora Herron by deed conveyed to defendant Buz-
ard the right to use 100 inches of the same water.

In the spring of 1882 William Herron constructed a ditch
from Cotton Wood creek to and over all these lands. The creek
runs in a northwesterly direction through the southwest quarter
of section 17. Most of this quarter section and also of the land
of the plaintiff is upon the bench, and, in order to convey water
to this portion of it, the ditch was constructed from a point on
the creek some distance above, and passes almost entirely around
the plaintiff's land in such a way as to make it convenient to irri-

gate the plaintiff's land from it. In 1883, owing, probably, to the fact that all the water in the creek during the irrigating season had already been appropriated, and also to the fact that the ditch could not be used on the lands on the north side of the creek, including a part of the southwest quarter and all of the northwest quarter of section 17, William Herron purchased an undivided one-third interest in a ditch on the north side of the creek known as the "Brown Ditch," and the water conveyed thereby, amounting to 600 inches. In the record this water right is referred to as the "Roy Hunter water right," and is the one in which the plaintiff claims an interest to the extent of 100 inches. The 200 inches thus acquired had been appropriated by Hunter by two different diversions, one in 1870 and the other in 1878, thus making Herron's right, according to the record, date one-half from 1870 and the other from 1878. It was the latter right which the defendant Leonora Herron conveyed to Buzard in 1897. From and after its purchase William Herron used the water from his own ditch on the south side, or from the Brown ditch and other ditches from the north side, as best suited his purposes.

The complaint alleges, in substance, that the water right in question, to the amount of 100 inches, together with the ditch constructed by William Herron in 1882, belongs to plaintiff as an appurtenance to his land; that the water is necessary to make the land productive; and that it has been continuously used for agricultural purposes by the plaintiff and his grantors since its acquisition by the said Herron. It is further alleged that the defendants assert some interest therein adverse to the plaintiff; that in July, 1901, without right, they diverted it away from the ditches of the plaintiff and deprived him of the use of it, and that they threaten to continue this diversion, to the irreparable injury of the plaintiff.

The defendants filed separate answers denying that the ditch and water right claimed by the plaintiff are or ever were appurtenant to the lands of the plaintiff, or that the plaintiff or his grantors or predecessors in interest ever used the ditch in con-

troversy and the waters conveyed therein to the amount of 100 inches, or any amount, to irrigate plaintiff's lands, except by permission of the grantors and predecessors of the defendants, or that the plaintiff or his predecessors ever had any right to the use of said water in any amount. As affirmative ground of relief, they then allege title to their lands respectively, and allege that it is necessary to use all the water thereon in order to make them productive; that William Herron made continuous and uninterrupted use of it upon the lands of the defendants from the date at which he acquired it down to the date of his death; and that from that time down to the bringing of this action they themselves had been making continuous and uninterrupted use of it.

The court found the issues for the defendants, and entered judgment accordingly. From the judgment and an order denying him a new trial, plaintiff has appealed.

Plaintiff seeks a reversal of the judgment upon the grounds (1) that the evidence does not support the findings; (2) that the findings do not support the judgment, and (3) that the court erred to his prejudice in the admission of certain evidence.

The controversy between the parties is indicated by the synopsis of the pleadings, and presents the sole question: Did the interest claimed by plaintiff in the Herron ditch and Hunter water right pass to the plaintiff under the conveyances from Joseph Herron and his grantees to the plaintiff as an appurtenance to his land?

William Herron was never vested with the legal title to this land until he took under the conveyance from his brother Joseph. He then took it with such rights appurtenant thereto, and only such, as Joseph had. Joseph had no right in the water whatever, for there is nothing in the evidence tending to show that he had obtained any interest theretofore by virtue of any contract or agreement made with William at the time of his settlement upon the land or at any time thereafter. William abandoned his inchoate rights in the land in the year 1885. But the presumption, if any, which might otherwise be indulged in, that

he intended also to abandon his right to the water, is overturned by the fact, conceded by all parties, that he used it continuously down to the date of his death. Indeed, plaintiff's assertion of his right is founded upon the fact of such use by William Herron, and, if it be conceded that William Herron abandoned his right to the water at the time his desert entry was canceled, he thereafter had no title which he could convey, and the plaintiff's right, in so far as it is based upon his appropriation, must fail. When he permitted his desert entry to be canceled, he was still in possession of the west half of section 17, and this, under the evidence, required the use of the water to render its cultivation possible. So that, assuming the fact to be, as plaintiff claims, that the ditch of 1882 was constructed for the purpose of reclaiming plaintiff's land, and that the interest in the Hunter right was purchased in order to effect this purpose, yet this fact does not establish the plaintiff's claim, when considered in the light of his subsequent conduct and the assertion of the right by William Herron to the exclusive use of the water up to the time he acquired Joseph Herron's title.

Section 1882 of the Civil Code recognizes the right of an appropriator or owner of a water right to change the place of diversion, as well as the use and the place of use. It therefore does not follow that, because water has been appropriated for a particular use, it forever thereafter must be applied to that use. "The legal title to the land upon which a water right acquired by appropriation made on the public domain is used or intended to be used in no wise affects the appropriator's title to the water right, for the *bona fide* intention which is required of an appropriator to apply the water to some useful purpose may comprehend a use upon lands and possessions other than those of the appropriator, or a use for purposes other than those for which the right was originally appropriated. Section 1882, Civil Code; *Nevada Ditch Co.* v. *Bennett,* 30 Ore. 59, 45 Pac. 472, 60 Am. St. Rep. 777." (*Smith* v. *Denniff,* 24 Mont. at page 29, and page 401, 50 Pac., 81 Am. St. Rep. 408.)

The evidence shows that, during most of the years subsequent to the settlement by Joseph Herron in 1885 until the death of William, the latter rented the land from his brother, and used a portion of the water upon it. What portion was thus used is not made to appear. But this evidence does not furnish any ground for the inference that William Herron intended to make it, or any part of it, appurtenant to the land. If this could be so, then by using a water right upon leased lands the owner would incur the risk of losing it. The right was originally acquired upon the public domain. If the title to the land in no wise affects the title to the water right, the fact that it has been used at this or that place, or upon particular land, will not of itself determine its character as an appurtenance. "One who asserts that a water right and ditch are appurtenant to certain lands has the burden of proving that they are appurtenances, and must connect himself with the title of the prior appropriator." (*Smith* v. *Denniff, supra.*)

The right of the plaintiff must therefore depend upon the interpretation to be given to the deeds furnishing the chain of title from William Herron to the plaintiff, for, as we have seen, the use of the water had not become appurtenant to plaintiff's land prior to the date of Joseph Herron's deed to William Herron. This deed purported to convey, and did convey, all rights which were appurtenant. (*Sweetland* v. *Olsen,* 11 Mont. 27, 27 Pac. 339; *Tucker* v. *Jones,* 8 Mont. 225, 19 Pac. 571; *Kimpton* v. *Jubilee Placer Mining Co.,* 16 Mont. 379, 41 Pac. 137, 42 Pac. 102.) But the right in question, being the exclusive property of William Herron, was not affected by it.

What rights, therefore, does the plaintiff appear to have acquired in the water under that deed, in the light of the facts as they then existed, and the behavior of the parties with reference to it down to the commencement of this action? This deed does not, nor does any of the others following it, describe any particular right. They only purport to convey such rights as were appurtenant. The evidence tends to show that William Herron used the water upon the Joseph Herron (the plaintiff's) land

during the time he held title to it, just as he did during the years when he was renting it. After the execution of the deed, and down to the commencement of this action, his widow used it upon the west half of section 17 until she relinquished the northwest quarter to the defendant Buzard in 1897, and that thereafter she and Buzard used it exclusively upon the same land. Buzard claimed his right under his deed from the widow. The evidence, it is true, is somewhat conflicting, and some of the witnesses testify that the plaintiff and his predecessors and tenants have used it continuously from the date at which William Herron executed the deed. The findings of the court, however, we think are fully justified by all the facts appearing in evidence, and should not be disturbed.

Without attempting to analyze the evidence and to state in detail our reasons for this conclusion, we shall briefly refer to one fact which seems to us significant. In 1890, just after the deed executed by Joseph Herron to his brother William, the latter, with others, brought an action to have the relative priorities to the rights in the water of Cotton Wood creek settled and determined. This action resulted in a decree under which William Herron was adjudged to have the title to the use of 100 inches by an appropriation made in 1870, and 100 inches by an appropriation made in 1878. Thereupon the parties employed a ditch tender to distribute the water during the irrigating season in accordance with the terms of the decree. This ditch tender was a witness, and testified that, from the date of the decree until the bringing of this action, he had distributed the water from year to year until the bringing of this action, awarding the 200 inches in controversy here to William Herron and to the defendants as his successors, and that the use made of any part of it by the plaintiff or his tenants, or any of his predecessors under the deeds subsequent to William Herron's deed to Joseph, was by permission of William Herron or the defendants. This exclusive use of the water by the defendants during all the years from 1891 to 1901, when this action was commenced, together with the fact that in the meantime neither

plaintiff nor John Hays, his immediate predecessor, asserted any right to it, justifies the conclusion that plaintiff's claim is not well founded.

The findings of the court upon the evidence are very full. Some of them are immaterial. This fact, however, does not impair the effect of such as are material and upon the issue actually involved in the controversy. The findings upon the material issue fully sustain the judgment.

The particular items of evidence of the admission of which complaint is made are alleged declarations made by William Herron, at the time he executed the deed to Joseph, that there was no water right appurtenant to the land conveyed, and that he did not intend to convey any water right, and also certain testimony by Joseph Herron that he never had or claimed any interest in the Hunter water right. It is urged that this testimony was incompetent and prejudicial to the plaintiff. Without pausing to determine the question whether the evidence was in fact incompetent, but assuming it to be so, we do not think its admission sufficient to warrant a reversal of the judgment. This is an equity case, and was tried by the court sitting without a jury. In such case the result will not be overturned merely on the ground that some irrelevant or incompetent evidence was admitted at the hearing. In such case, if the incompetent evidence is so unimportant and trifling, as compared with the competent evidence introduced and considered, that it is apparent that the result reached was probably not based upon the incompetent evidence, it will be presumed that such evidence was disregarded by the court when it came to make its findings. (*Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805.) But, conceding that the trial court was probably influenced in its conclusions by the evidence alleged to be incompetent, yet this court is authorized by the Act of the Second Extraordinary Session of 1903 (Laws Second Extra. Sess. 1903, Chapter I) to review and determine all the questions of fact as well as of law in equity cases, and to render such judgment therein as the cir-

cumstances may justify, if upon the record it appears that it is not necessary to remand the cause for another hearing. It appears from this record that the parties had ample opportunity to introduce, and probably did introduce, all the evidence applicable, and that a hearing of other evidence is not necessary in order finally to settle and determine the rights of the parties. Excluding the evidence complained of, and weighing the remainder of it in the record in order to determine the rights of the parties thereon as an original proposition, we think that the findings of the trial court should not be disturbed, as the evidence preponderates in favor of the conclusions reached by it.

The judgment and order are affirmed.

*Affirmed.*

Mr. Justice Holloway, being disqualified, takes no part in this decision.

Rehearing denied.