HEAD ET AL., APPELLANTS, *v.* HALE ET AL., RESPONDENTS.

(No. 2,595.)

(Submitted December 21, 1908.    Decided February 8, 1909.)

[100 Pac. 222.]

*Water Rights—Placer Mining—Rights of Lower Appropriators*
*—Abandonment—Subsequent Appropriation—Relation Back.*

Water Rights—Placer Mining—Recapture of Water.
    1.    Water used for placer mining purposes is subject to recapture and appropriation by farmers on the stream below.

Same—Change of Use—When not Permissible.
    2.    While a person entitled to the use of water may change the point of its diversion and use it for other purposes than that for which it · was originally appropriated, this may not be done if persons on the stream below him are injured thereby; hence where water had been appropriated for placer mining purposes, the successors of the appropriator could not so change its use as to deprive lower appro-

priators of their rights, theretofore acquired, in the use of it for irrigating purposes.

Same—Abandonment—Subsequent Appropriation—Title—Relation Back.

3. Where upon the death of one who had held public lands under a squatter's right and appropriated water for placer mining purposes, there was no one to take the land under the laws of succession or by devise, and the premises thereafter remained without a claimant or owner for about two years, when others, not in privity with the original occupant, went into possession as upon unoccupied public lands for mining purposes, their rights to the use of the water did not relate back to the date of the appropriation made by the decedent, but had their inception as of the date of their entry, even though they repaired and used the ditches of the original claimant.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Charles H. Head and others against Robert S. Hale and others. From a decree granting insufficient relief and an order denying a new trial, plaintiffs appeal. Reversed and remanded.

*Messrs. Walsh & Newman,* and *Messrs. Gunn & Rasch,* for Appellants.

*Messrs. McConnell & McConnell,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action grew out of a controversy between the plaintiffs and defendants over the use of the water flowing in Seven-Mile creek and its tributaries, in Lewis and Clark county, and was brought to have determined the priorities of their several rights and for a perpetual injunction to restrain the defendants from diverting it or any of it to the detriment of plaintiffs' rights. The trial court heard the evidence upon the issues made by the parties, and entered a decree fixing the dates and amounts of their respective appropriations and enjoining them from interfering with the rights of the others. The plaintiffs, being

dissatisfied with the decree in so far as it declared defendant Hines and the Northern Pacific Railway Company entitled to a priority over them, moved for a new trial upon the questions at issue between themselves and these defendants. This motion was denied. The plaintiffs thereupon appealed from the decree and the order denying their motion.

The contention made in this court is that the evidence submitted at the trial was not sufficient to sustain the findings as to the rights referred to. The rights of the other defendants are not brought in question. Plaintiffs assert the right to the use of two hundred and twenty-five inches under an appropriation by their predecessors in interest out of the main stream in the month of July, 1864, and continuous use of this quantity from that time until the bringing of the action, except when their rights had been interfered with by the defendants. It is alleged that all of the defendants other than the Northern Pacific Railway Company, during the summer of 1904 had wrongfully diverted the water from the stream and its tributaries to lands owned by them, thus depriving the plaintiffs of the use of it, and that they threatened to continue thus to invade the plaintiffs' rights, to their irreparable damage. As against the Northern Pacific Railway Company it is alleged that it maintains water-tanks at various points along the line of its road in Lewis and Clark county where it is in proximity to the stream, for the purpose of supplying its locomotives with water and for general purposes in connection with the operation of its road, and that during the summer of 1904, by means of pumps, ditches, canals, and other devices located at points above the heads of plaintiffs' ditches, it diverted from the stream large quantities of water, to the use of which the plaintiffs were entitled, and had continued this diversion down to the bringing of this action, to the irreparable damage of plaintiffs. Seven-Mile creek has its source in the mountains in the western part of Lewis and Clark

county, and flows toward the east. The subjoined sketch will serve to illustrate the contentions of the parties.

The plaintiffs' lands are situate east of Austin station and below the mouth of Skelly Gulch, and, so far as we can learn from the record, the heads of their ditches are below this tributary. The railroad of the defendant company, running westward, proceeds up the stream to Austin station, where it turns to the northwest. Defendant Hines asserts his right under three separate appropriations—one, of all the water flow-

ing in the tributary falling into the main stream from the south, and designated as "Mountain Stream," alleged to have been made in the spring of 1865; a second from Greenhorn Gulch, of the same date and amounting to fifty inches; and the third from Austin Gulch, amounting to fifty inches, made in the spring of 1867. These appropriations it is claimed were made by one Beheim, who was then in possession of the lands now occupied by Hines, and under whom Hines claims as successor in interest. The defendant Northern Pacific Railway Company is the successor in interest of the Northern Pacific Railroad Company, the builder and original owner of the Northern Pacific railroad, extending from Lake Superior to Puget Sound. This defendant became its successor on September 1, 1896. When the line of road was built through Lewis and Clark county in 1883, a station was established at Austin. In order to obtain a supply of water for its locomotives and for general purposes, it built a tank and installed a pumping plant at this point. It obtained water from a well sunk on its own land. This well was supplied by drainage from Seven-Mile creek. The amount diverted from this source was and is three and forty-three hundredths inches, and was and had been used without reference to the amount flowing in the stream. On July 18, 1885, as a precaution against any failure of this supply and to meet its increasing necessities, this defendant purchased from two of the predecessors of the defendant Hines—J. C. Sloan and T. H. Coulter—who had possession at that time of the lands and water rights which Hines now owns, the use of ten inches of water flowing in the "Mountain Stream," together with the right to construct a reservoir on their lands for storage purposes. Subsequently it acquired other rights, one by purchase and others by appropriation. Description of these or further reference to them is not necessary, because they are not in question on this appeal. Upon the allegation of these facts this defendant bases its claim, and its right is not questioned. The date to which it must be made to relate, however, depends upon the date properly assignable to the Beheim or Hines appropriations. The court found that

Beheim made an appropriation of all the water in the mountain stream in May, 1865; of fifty inches out of Greenhorn Gulch at the same time; and of fifty inches out of Austin Gulch in the spring of 1867. Plaintiffs' appropriation of two hundred and twenty-five inches was found to have been made on June 11, 1865. The plaintiffs' contention is that the evidence does not justify a finding that any of the Hines rights relate to a date earlier than the spring of 1881.

It is not disputed that Beheim built a cabin on the land now occupied by Hines as early as 1867, and from and after that time until his death in 1879, diverted water from the "Mountain Stream" to irrigate a small garden, and that he used it for this purpose as well as for placer mining along Seven-Mile creek, with other water diverted from the main stream or the tributaries Austin and Greenhorn Gulches. Adopting the most liberal view of the evidence, the date of his alleged appropriations could not be fixed at an earlier date than the fall of 1865, which would necessarily assign to all the Hines rights later dates than those of plaintiffs, and make them inferior in point of priority. It is also impossible to reach a conclusion that any serious effort to use water for irrigation was ever made by Beheim, or any other person who occupied the Hines property after his death until Sloan and Coulter came into possession of it in 1881; for the only portion of the land ever cultivated until 1881 was the Beheim garden, which one of the witnesses said had an area about as extensive as the courtroom in which the court was sitting at the time of the trial. No witness estimated its area to be greater than two acres. Except for the irrigation of this small area, the diversions by Beheim were for placer mining purposes along the creek on what are now the Hines lands and upon lands some distance below. The water used for this purpose naturally found its way back into the stream, and was subject to recapture by the farmers on the stream below and to be appropriated to agricultural uses. (*Alder Gulch Con. Min. Co.* v. *King,* 6 Mont. 31, 9 Pac. 581.) Sloan and Coulter could not thereafter change the use to which Beheim had put the water

to another and different use, and thus deprive the agricultural appropriators. A person entitled to the use of water may change the point of its diversion, and may use it for other purposes than that for which it was originally appropriated, provided always, however, other parties are not injured thereby. (Revised Codes, sec. 4842.) Even in the absence of this statutory declaration the rule would be the same. (*Columbia Min. Co.* v. *Holter,* 1 Mont. 296; *Gassert* v. *Noyes,* 18 Mont. 216, 44 Pac. 959; *Hague* v. *Nephi Irr. Co.,* 16 Utah, 421, 67 Am. St. Rep. 634, 52 Pac. 765, 41 L. R. A. 311; *Cache La Poudre Reservoir Co.* v. *Water S. & S. Co.,* 25 Colo. 161, 71 Am. St. Rep. 131, 53 Pac. 331, 46 L. R. A. 175; Kinney on Irrigation, sec. 234.)

But it is not here important to inquire when Beheim made his appropriations, or for what purpose he made them, or the actual use made of them by him during his lifetime. He had only a squatter's right in the lands, and, when he died, there was no heir or other person who followed him under the laws of succession or by devise. The lands, forty acres in extent, seem to have been considered as abandoned. In any event, they remained without claimant or owner until 1881, when possession was taken by Sloan and Coulter, whom Hines succeeded in 1895, and from whom the Northern Pacific Railroad Company acquired its right in 1885. There is no suggestion in the evidence that Sloan and Coulter were the successors of Beheim by conveyance or under the laws of succession, or that they went into possession under any other claim than that of one who enters upon unoccupied public lands for mining purposes. Whatever rights they had, therefore, were obtained by appropriation as of that date, though it be considered, as the evidence shows the fact to be, that they thereafter repaired and used the Beheim ditches. In Farnham on Waters, section 670a, the rule of law on this subject is stated thus: "The question whether or not one in possession of a water right at a given time, which was originated by another, has sufficient title thereto to enable him to protect and defend it, depends upon whether or not he is in privity with the original owner. The rights of an owner of

land claiming water as appurtenant thereto do not relate back to the inception of the alleged right in the appropriation made by the original settler of such land, where there is no proof of any contractual relation between his predecessor in title and such original settler, either directly or indirectly touching the settler's rights, and it is not apparent that his predecessor ever acquired such rights from such settler.'' It was applied by this court in *Hays* v. *Buzzard,* 31 Mont. 74, 77 Pac. 423, and is the rule of decision in all the arid states where the question of succession has been considered. (*Union Milling & Mining Co.* v. *Dangberg* (C. C.), 81 Fed. 73; *Chiatovich* v. *Davis,* 17 Nev. 133, 28 Pac. 239; *Low* v. *Schaffer,* 24 Or. 239, 33 Pac. 678; *Utt* v. *Frey,* 106 Cal. 392, 39 Pac. 807.)

The findings, in so far as they fix the date of any of the defendants' rights here involved, are not justified by the evidence. It is not necessary, however, to order a new trial. The cause is remanded to the district court, with directions to amend its findings so as to fix the date of these appropriations as of the spring of 1881, and to amend the decree accordingly.

*Reversed and remanded.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.