(February 6, 1913.)

LOIS NELSON, Appellant, v. C. R. HUDGEL, Respondent.

[130 Pac. 85.]

FRAUD—FALSE REPRESENTATIONS AND STATEMENTS—EVIDENCE—EFFECT OF FALSE AND FRAUDULENT REPRESENTATIONS—CHECK—INNOCENT PURCHASER.

1. Fraud is never presumed; it must be established by clear and convincing evidence, and this is especially true where a party assails the integrity of a written contract.

2. Where parties entering into a contract are mutually cognizant of the facts which enter into said contract, and each stands on the same footing with reference to the contract and the facts and circumstances under which such contract was entered into, and there is no fiduciary relation between them, the law will not aid or help either one of the parties upon the ground that he has not himself used diligence and common sense, if the means of information is equally open to both, and there has been a mistake without fraud or falsehood.

3. Where N. sues H. upon a check issued by H. upon a bank, payable to S., and it is shown that as a consideration for said check S. made certain statements and representations as to securi-

ties which would be deposited by S. with H. as security for the debt for which the check is given, and S. indorses and delivers said check to N. for a valuable consideration, and both N. and H. heard the same statements and representations made by S., and neither of said parties knew that such representations were false and made for a fraudulent purpose, and a written contract was made between H. and S. as to the deposit of the securities, and it was upon that instrument that H. issued and delivered the check, N. became the owner and holder of said check free from defenses available to prior parties among themselves, and may enforce the payment of the instrument for the amount thereof.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Carl A. Davis, Judge.

Action to recover upon a bank check. *Reversed.*

Morrison & Hindman and Harry S. Kessler, for Appellant.

The burden of proof in establishing fraud is always on the party alleging it. Fraud is never to be presumed. It can only be established by clear and convincing evidence. (Cent. Dig., Fraud, secs. 46, 47; Dec. Dig., Fraud, 50.)

And this is especially true where the integrity of written instruments is attacked. (*Pickle v. Lincoln Co. State Bank,* 61 Wash. 545, 112 Pac. 654.)

The law of fraud does not contemplate that a person can recklessly and carelessly place his negotiable instrument on the market, knowing that it will be negotiated to innocent parties, and later, when he finds that he has permitted himself to be defrauded through his own gross negligence, set up a third party's fraud to avoid liability on the instrument. (*Vaughn v. Johnson,* 20 Ida. 669, 119 Pac. 879, 37 L. R. A., N. S., 816; *Murray v. Lardner,* 2 Wall. (U. S.) 110, 17 L. ed. 857.)

A party who has put his promissory note on the market and allowed a consideration to be paid therefor is estopped from varying its terms and escaping liability by proof of parol agreements made before its delivery. (*McIntosh-Hunt-ington Co. v. Rice,* 13 Colo. App. 393, 58 Pac. 358.)

Robert R. Wedekind, and Davidson & Bacon, for Respondent.

A principal cannot ratify that part of a contract which may be beneficial to him and repudiate the remainder. If he accepts the benefits of a contract, he must take it with its burdens. (Clarke & Skyles on Agency, secs. 108, 140, 141; *Graves v. Spier,* 58 Barb. (N. Y.) 349; *Bennett v. Judson,* 21 N. Y. 238; *Castle v. Bullard,* 23 How. (U. S.) 172, 189, 16 L. ed. 424; *First Nat. Bank v. Shaw,* 157 Mich. 192, 121 N. W. 809; *Rogers v. Empkie etc. Co.,* 24 Neb. 653, 39 N. W. 844.)

. The burden of proof was upon the plaintiff to show that she was a holder of the check in good faith, and as to whether this question was successfully met was one of fact to be decided by the court. This question the court decided against the appellant upon the evidence, which was clearly sufficient, and the findings will not be disturbed. (*Winter v. Nobs,* 19 Ida. 18, Ann. Cas. 1912C, 302, 112 Pac. 525; *Winters v. Hutchins,* 20 Ida. 749, 119 Pac. 883; *Cedar Rapids Nat. Bank v. Myhre Bros.,* 57 Wash. 596, 107 Pac. 518; *City Nat. Bank v. Jordan,* 139 Iowa, 499, 117 N. W. 758; *Shellenberger v. Nourse,* 20 Ida. 323, 118 Pac. 508.)

Ordinary prudence and diligence do not require a person to test the truth or representations made to him by another as of his own knowledge, and with the intention that they shall be acted upon if the facts are peculiarly within the other party's knowledge or means of knowledge, though they are not exclusively so, and though the party to whom the representations are made may have an opportunity of ascertaining the truth for himself. (*Watson v. Molden,* 10 Ida. 570, 79 Pac. 503; 18 Am. & Eng. Ency. of Law, 120; *Fischer v. Hillman,* 68 Wash. 222, 122 Pac. 1016, 39 L. R. A., N. S., 1140; *Madden v. Caldwell Land Co.,* 16 Ida. 59, 21 L. R. A., N. S., 332.)

STEWART, J.—The appellant instituted this action against the respondent to recover upon a check issued by the respondent dated December 23, 1910, upon the Boise City Na-

tional Bank, requiring the bank to pay to the order of M. A. Swift $1,293.75. It is alleged that the check was indorsed and delivered to the plaintiff and presented for payment and refused.

The defendant admits in his amended answer that the check was executed and delivered and not paid, and also alleges as a defense that, on December 23, 1910, the husband of the plaintiff applied to T. A. Bisby to procure a loan of $1,500 for the use and benefit of M. A. Swift and the plaintiff. That Charles H. Nelson, husband of plaintiff, falsely, fraudulently and deceitfully represented and stated to Bisby that Swift would secure the payment of the loan by the assignment and pledge of certain securities, and that Bisby stated and represented to defendant that Swift was the owner of such securities, and that such representations and statements induced the defendant to make the loan and execute the check sued upon, and that the defendant had no knowledge of the falsity of such representations; that at such time Swift was not the owner or in possession of the securities represented, and that the plaintiff had full knowledge of the falsity of the facts regarding the loan at the time the check was executed; that the check was issued and given upon the express conditions and understanding that said securities were hypothecated and pledged as security.

The cause was tried before the court and findings of fact and conclusions of law were made in favor of the respondent.

The trial court found the facts in favor of the defendant, and the particular findings involved on this appeal are in substance: That on December 21, 1910, M. A. Swift was indebted to the plaintiff in the sum of $1,500 upon a promissory note given by Swift to the plaintiff, which was past due, and upon demand of payment Swift stated that she did not have the money, but that she had certain securities which she would deposit as collateral to secure her note given to anyone who would loan her sufficient money to pay the note due; that on December 23, 1910, Charles H. Nelson, the husband of plaintiff, applied to T. A. Bisby to procure a loan of $1,500 for the use and benefit of M. A. Swift and the plaintiff; that the

said Nelson represented and stated to Bisby that Swift would secure the payment of the loan by the assignment and pledge of certain securities, and that Bisby stated and represented to the defendant that Swift was the owner of such securities, and that such representations and statements induced the defendant to make the loan and execute the check sued upon, and that the defendant had no knowledge of the falsity of such representations; that at such time Swift was not the owner or in possession of the securities represented, and that the plaintiff had full knowledge of the facts regarding the loan at the time the check was executed; and that the check was issued and given upon the express conditions and understanding that said securities would be hypothecated and pledged as security; and that a written contract was entered into between M. A. Swift and C. R. Hudgel wherein "C. R. Hudgel agrees to loan to M. A. Swift $1,700.00 for 6 months at 12 per cent per annum. M. A. Swift agrees to give a note for same and further agrees to give the following described papers as additional security. A contract from the state of Idaho for one hundred and fourteen acres of school land. One $2,500.00 note. About $8,000 worth of piano contracts. Contracts and money to be exchanged at the Boise City Nat. Sat. Dec. 24th at 10:30." That at the time of making the representations as to the personal property owned and possessed by Mrs. M. A. Swift, Charles H. Nelson did not know of the truth or falsity of such representations, but relied upon the statements made by Swift; that such statements made by M. A. Swift were false; that neither the plaintiff, plaintiff's agent nor the defendant in this case knowingly participated in any fraudulent dealings.

The court also found that Swift was not the owner of said property and that she did not present and deliver to the bank or to the defendant the securities mentioned in the agreement.

Other findings were made but the foregoing findings of fact are the particular findings of the court that are involved upon this appeal. Judgment was rendered accordingly. This appeal is from the judgment.

The errors relied upon are two: First, that the evidence is insufficient to support the findings; second, that the findings do not support the judgment, for the reason that the findings are contradictory and inconsistent, and to the effect that neither the plaintiff nor her agent was guilty of fraud.

As conclusions of law the court found, first, that the plaintiff received the check with notice that the check was procured from the defendant by Mrs. Swift under false pretenses and with full knowledge of the manner and means employed to induce the said defendant to draw said check and deliver it to M. A. Swift and the plaintiff in this case; second, that the plaintiff is not entitled to recover, and that the defendant is entitled to judgment in his favor with costs of suit.

The first of these grounds would seem to be a conclusion of the facts upon the evidence, and not a conclusion of law, and is directly in conflict with finding No. 23, which finds that neither the plaintiff, the plaintiff's agent nor the defendant in this case knowingly participated in any fraudulent dealing.

From a careful consideration of the evidence in this case, we are satisfied that there is none whatever which connects the plaintiff or her husband with any misrepresentation or statement which was made by them to the defendant, which was known to be false, and that the court was correct in finding that neither plaintiff, nor the plaintiff's agent Nelson, knowingly participated in any fraudulent dealing, either in procuring the loan or in securing the check. The facts are plain and certain, and are in no way contradicted by the evidence: M. A. Swift was indebted to the plaintiff on December 21, 1910, in the sum of $1,500; she did not have the money to pay such indebtedness, and upon demand of payment informed Nelson, the husband of the plaintiff, that she had securities which she would deposit as collateral to secure her note given to anyone who would loan her sufficient money to pay the note due. Upon this statement being made to Nelson, Nelson and Swift went to Bisby, a loan agent, for such loan, and Bisby secured Hudgel, the respondent, as a person who would make the loan. Nelson and Swift met Hudgel, and Nelson

repeated to Hudgel, in the presence of Swift, the proposition made by Swift to Nelson, that she had certain securities which she would deposit as collateral to secure a note which she would give for a loan sufficient to pay her note to Nelson. Up to that time the foregoing is all the connection Nelson had with the transaction. There is no evidence whatsoever to show that he in fact knew anything about the securities Mrs. Swift proposed to deposit as security, or that he ever saw the same, or that he had any information upon the subject whatever, or that plaintiff knew any facts about the securities. After this information had been given, the respondent and Swift commenced their negotiations, and after she had stated to him the securities she would pledge as collateral security for her own note which she would give for the loan, a written contract was entered into between Swift and Hudgel describing the securities and the time of depositing the same, which were to be pledged by Mrs. Swift as collateral for her own note to be given to respondent for the loan. In this written contract it was provided that M. A. Swift was to give a note for $2,500 and deposit as collateral a contract from the state of Idaho for 114 acres of school land, about $8,000 worth of piano contracts, and that these were to be exchanged at the Boise City National Bank on December 24, 1910, at 10:30 o'clock. This contract was dated December 23, 1910, and it was upon this contract that the respondent agreed to make the loan to M. A. Swift, for which the check in controversy in this case was a part of the sum to be loaned. This contract was signed by M. A. Swift and C. R. Hudgel, the respondent.

At or about the time the contract was made, Nelson stated to Hudgel that it would be a very great accommodation to him if he would give him a check at that time for the amount due on the note that Mrs. Swift owed the plaintiff, in order that Nelson might meet some obligations he owed to the state of Idaho on some lands, and in order that he might leave Boise and reach home at Christmas, and in consequence of such request Hudgel issued the check sued upon in this action. This accommodation that Nelson asked of Hudgel was

not based upon any false statement of Nelson. to Hudgel, and could in no way mislead Hudgel or cause him to act upon any false statement of Nelson, but, on the contrary, it was shown that Hudgel relied wholly upon the written contract of Mrs. Swift that she would deposit the securities named in the contract. The defendant was in no way deceived by Nelson, because Nelson had no knowledge, so far as the record shows, that Mrs. Swift did not own or possess, or would not deposit these securities. Hudgel had as much information as Nelson with reference to the securities; what Nelson knew was merely the statement of Mrs. Swift; this same statement that was made to Nelson was made to Hudgel, and Hudgel knew all the facts that Nelson knew. The parties evidently were dealing at arm's-length, with equal opportunities to know the truth or falsity of Mrs. Swift's statements both to Nelson and Hudgel. The information Nelson had came to him from the person who was best informed on the subject, Mrs. Swift; the information Hudgel had came from the person who was best informed on the subject, Mrs. Swift, and it was upon that information, put in writing, that he acted. It was evident from the actions of the parties that Hudgel believed the truth of the statements made by Swift, because such statements were placed in writing in a contract which was signed by Hudgel and Swift, and upon which the payments were made. There is no evidence whatever that plaintiff had any better knowledge of the financial responsibilities and business affairs of Mrs. Swift or the securities she had or would have than the defendant. The defendant was a resident of Boise; Mrs. Swift was also engaged in business at Boise at the time the contract was made, and had been for years. The securities mentioned were such that the defendant could have ascertained their genuineness by the use of the telephone or personally examined the records, and there was nothing in any way concealed or covered up which would preclude Hudgel's procuring all the information he desired as to whether the securities in fact were genuine and were in existence; or if Hudgel had inquired of Mrs. Swift, with whom he was contracting, and to whom he was making a loan, about these

securities, where they were, or their general character, or if she had them in her possession or control, he could have ascertained to a certainty whether she was able to carry out the contract she proposed. He apparently, however, acted upon her written contract and accepted the statements therein made as the inducement for which he executed the check for the payment of the loan. In fact, he acted wholly upon the representations made by Mrs. Swift, and Mrs. Swift alone. Whatever statements may have been made by the parties prior to the execution of the contract as to the securities can only be of consequence in so far as such statements explain any ambiguities of the contract; but in this case the contract is plain and certain and requires no explanation.

It is a well-recognized rule of law, which applies to the facts of this case, that where parties are mutually cognizant of the facts acted upon, or stand upon the same footing with relation to them, and there exists no fiduciary relation between them, the law will not lend its aid to help the injured party for the simple reason that he has not himself used diligence and common sense, if the means of information is equally open to both parties, and there has been a mistake without fraud or falsehood, and there would probably be no remedy at law or in equity. (Smith on the Law of Frauds, p. 214.)

There is also another rule of law which especially applies to this case, that fraud is never presumed, but must be established by clear and convincing evidence, and that this is especially true where a party assails the integrity of a written instrument. (*Pickle v. Lincoln County State Bank,* 61 Wash. 545, 112 Pac. 654.)

Applying the foregoing rules of law to the facts in this case, it is clear that both the plaintiff and the defendant had the same information and honestly acted upon the same statements and representations, to wit, the statements and representations of M. A. Swift, and that the respondent knew as much about the truth and reliability of the statements and representations as Nelson or the appellant, and that the respondent entered into a written contract with the party making the statements and representations, and it was upon that

written instrument that the respondent acted; and in making said contract there was no fraud or misrepresentation on the part of the plaintiff. There was no misrepresentation or fraud perpetrated upon the part of the plaintiff at the time the favor and accommodation was asked by Nelson of the respondent, in giving the check in controversy before the securities were deposited, for the reason that the request was made solely as an accommodation, and the statements Nelson made were merely opinions as to what Mrs. Swift would do, and Hudgel had entered into a written contract with Swift that she would do the things contained therein, and accepted such provisions as a guaranty sufficient to satisfy him that the securities would be deposited, and was not misled by Nelson's making such request. Upon Hudgel's agreeing to give the check the plaintiff surrendered the note she had against Mrs. Swift, and parted with the only evidence of debt she previously had, and accepted the check in good faith as the payment of such note, and the check was indorsed and turned over to plaintiff and the plaintiff became the owner thereof in good faith, without any fraud or deceit.

The evidence in this case clearly shows that the appellant was the holder in due course of the check sued upon in this action, under the provisions of sec. 3509, Rev. Codes. The check was indorsed by the payee, M. A. Swift, and delivered to the appellant, in consideration of which the appellant surrendered to M. A. Swift the note the appellant held for the sum of $1,500, and after such transfer it was presented for payment. Under the provisions of the statute, sec. 3514, Rev. Codes, the plaintiff became the owner and holder of said check, free from defenses available to prior parties among themselves, and may enforce the payment of the instrument for the full amount thereof against all parties liable thereon. She certainly had no notice of any infirmity in the instrument or any defect therein. The judgment therefore is *reversed,* and a new trial granted. Costs awarded to appellant.

Sullivan, J., concurs.