(No. 5672.   December 22, 1931.)

FEDERAL LAND BANK OF SPOKANE, a Corporation, Respondent, v. UNION CENTRAL LIFE INSURANCE COMPANY, a Corporation, Appellant.

[6 Pac. (2d) 486.]

McElroy & Chalfant and W. A. Brodhead, for Appellant.

Bissell & Bird, for Respondent.

GIVENS, J.—In 1916, Martin Albrethsen acquired title to what is referred to as the Kingsbury ranch, including the N.½NE.¼ sec. 8, and the E.½E.½ Fractional Sec. 5, Tp. 1 S., R. 19 E., B. M., to which described land a water right of 105 inches, with a priority of May 1, 1886, had been decreed by the Frost decree adjudicating the waters of Wood River, December 13, 1909. The entire Kingsbury ranch consists of about 713 acres, with a total decreed water

right of about 750 inches.   At the same time in 1916, Martin Albrethsen acquired the so-called Buller ranch, adjoining the Kingsbury ranch to the south, consisting of about 720 acres, with a water right awarded by the same decree to said ranch generally, of some 750 inches of water of the priority of June 12, 1886.

Martin Albrethsen did not take possession of the Kingsbury place until 1917, and the Buller place until 1921, because the latter property was under lease until that time.

February 27, 1920, Martin Albrethsen mortgaged the above designated N.½NE.¼ Sec. 8, and E.½E.½ Fractional Sec. 5, Tp. 1 S., R. 19 E., B. M., of the original Kingsbury ranch, to respondent, together with appurtenances, etc., which concededly includes whatever water right there was belonging thereto; but no specific right was designated, and the only recorded appurtenant water was as above indicated, being the 105 inches awarded in the Frost decree.   By foreclosure, respondent acquired title to this land and its appurtenant water.

June 7, 1922, Martin Albrethsen mortgaged the Buller ranch and 600 inches of water (150 inches of the original decreed right thereto having been previously transferred by him, which 150 inches is of no moment herein) as appurtenant thereto, to appellant, and appellant, by foreclosure, has acquired title thereto.

Respondent brought suit to quiet title to 150 inches of this 600 inches of water of the Buller water right, on the ground that while Martin Albrethsen owned both the Kingsbury and Buller ranches, he intentionally transferred 150 inches of the Buller right to the land mortgaged February 27, 1920, to respondent.

Appellant attacks the court's findings, conclusions, and judgment on various grounds, two of which we will consider.

First, that no permit was secured from the commissioner of reclamation under C. S., sec. 5582, authorizing the change of use from the Buller ranch to that portion of the Kingsbury ranch involved; being the land heretofore specifically described.   Before a person may have the place of

use of water changed, he must show that he owns the water, or has the right to have it changed, which must, if there is a dispute, be determined in an action for that purpose. (*Twin Falls Canal Co. v. Shippen*, 46 Ida. 787, 271 Pac. 578; *First Security Bank v. State*, 49 Ida. 740, 291 Pac. 1064.)

Under the peculiar facts in this case, i. e., that at the time when respondent contends the transfer of the water from the Buller place to the Kingsbury place was made, Martin Albrethsen owned both land and water and all the water came through the same ditch, and since no other user would have been affected by such change of use, it would seem that no necessity existed at that time for statutory action before the commissioner of reclamation. While, therefore, the fact that Martin Albrethsen never sought statutory authority to change the place of use from the Buller ranch to the Kingsbury ranch, of this 150 inches of water, is a circumstance bearing on whether he intended so to change the appurtenancy of the water, it is not an impediment to his successor in interest bringing an action to quiet title to the water involved.

The real controversy revolves around the rule of law as stated by respondent:

"Where one owns two ranches and openly and intentionally transfers a water right from one ranch to the other, for permanent use on the latter, immediately such water is separated from the one ranch and becomes an appurtenance to the one to which it is so transferred; this right of transfer being one of the incidents of ownership."

This being a suit to quiet title, the burden of proof rested on respondent to prove according to its own statement of the law, that Martin Albrethsen intentionally transferred 150 inches from the Buller ranch to the Kingsbury ranch.

Respondent called Martin Albrethsen as its witness and examined him, but never asked him whether he so transferred this water; whether he intended to transfer it; what water he considered he was mortgaging February 27, 1920, to respondent, or what water he intended the mortgage to cover as appurtenant to the portion of the Kingsbury ranch

covered by the mortgage. (Jones, Commentaries on Evidence, 2d ed., sec. 709; 41 C. J., pp. 450, 475; *Seymour Water Co. v. Lebline,* 195 Ind. 481, 144 N. E. 30, 145 N. E. 764.) Respondent relies solely on nonuse on the Buller place, and use on the Kingsbury place, of the water in question.

Martin Albrethsen's son, Holger Albrethsen, who managed or worked the places for his father at certain times, testified as follows:

"Q. Between the time 1918 and 1924 were you engaged with your father in farming what is known as the Kingsbury and the Buller Ranches? A. I farmed for myself 1918, '19 and '20; then I rented my own place and moved on the Buller place and farmed it for him.

"Q. Were you from 1918 to 1924 acquainted with the water right appurtenant to your father's ranch, that is the ranch known as the Buller ranch? A. More or less, yes.

"Q. Did you have charge of the irrigating of that ranch? A. I did in 1921, '22 and '23.

"Q. I will ask you to state if you know how the ranch which was composed of the Kingsbury and the Buller ranches was operated from 1918 until 1924? A. From 1918 to '21; I cannot tell you for sure.

"Q. How was it operated after that? A. The three years I had complete handling of it it was operated as one unit.

"Q. Did you have a water right out of Big Wood River for this land? A. Yes, sir.

"Q. What water rights did you use on this land during the years you have mentioned? A. I just used the water, it was mixed up.

"Q. What rights were mixed up? A. I always supposed the Buller right; the old Buller right and what Kingsbury right there was. . . . .

"Q. Now will you tell the court how you used the Kingsbury and Buller water in the irrigation of this place? A. On whatever part of the ranch that needed the water worst.

"Q. In using this water right, state whether you would or would not use this entire water right as the water right for the entire ranch? A. A water right for the entire ranch;

what I mean by the entire ranch is a combine of the ranches, the Buller and Kingsbury ranches.

"Q. You used the water, all of the water, as the water right for all of the ranch? A. Yes.

"Q. And in using this water right as a water right for all of the ranch, would you put the water on that part of the ranch which needed the water and for which you could get the most beneficial use? A. To the best of my judgment."

There was no specific showing of what, if any, particular or definite amount of water was used on the land described.

Holger Albrethsen further testified:

"Q. You was not acquainted then with the practice usually followed by your father? A. I don't know what his practice was.

"Q. You are not acquainted with the practice followed by other parties in the irrigation of the two hundred and forty acres I just described? A. No. . . . .

"Q. You say you got as much as a thousand inches to irrigate with? A. When the water was plentiful in the spring.

"Q. How much of that was Buller water? A. I have no idea.

"Q. How much was the Kingsbury Ranch water? A. I don't know that either.

"Q. How much water was you supposed to be entitled to? A. Around eight hundred inches, I think?

"Q. Eight hundred inches? A. Somewhere near eight hundred inches.

"Q. As a matter of fact, you didn't get any definite amount of water? A. It varied according to the ditch strength and according to the supply.

"Q. And you used it wherever you thought it would do the most good? A. Yes, sir. . . . .

"Q. And that was your experience during the years 1921, '22 and '23? A. Yes, sir.

"Q. And that was after the mortgage was given to the Federal Land Bank? A. I cannot say as to that."

To sustain its contention, respondent relies entirely on proof that when the land was occupied by Martin Albrethsen

or his son, or his lessee, and there was nothing to show in the slightest that the lessee was Martin Albrethsen's agent, that there was such nonuse of the 150 inches in question on the Buller place, and use on the Kingsbury place, as to show on Martin Albrethsen's part an intention to make a permanent transfer. Martin Albrethsen and his son testified, and all the testimony showed merely that the ranches were operated as a unit; the water (both Buller and Kingsbury) was "handled to the best advantage," and was "handled together." In 1917, when an irrigation district was organized, Martin Albrethsen kept the Buller land and 600 inches of water out of the district, while the Kingsbury land and water went in; thus in 1917 he had not intentionally transferred any of the Buller water to the land in question.

There is evidence that the Buller ranch did not need the full 600 inches, and that the Kingsbury ranch needed more than decreed to it by the Frost decree, but when it is considered that during the time when respondent contends the transfer was made, between 1916 and 1920, or 1926, the land and water was all owned by Martin Albrethsen, such general use on both places of all or part of the water cannot show abandonment of the water on the Buller ranch, and permanent transfer to the Kingsbury ranch.

Respondent, as we understand it, does not go so far as to contend that there was abandonment by Martin Albrethsen of the water on the Buller place, but that nonuse on the one, and use on the other shows a transfer. California has a statute along this line; we have none, but conceding that nonuse on the one place and use on the other would thus ripen into, or show a transfer, the question of the length of time becomes of importance. California in considering this section of its statute (Civ. Code, sec. 1411), has held that though the statute fixes no time, the standard to be applied would, and should, be the same as in cases of prescription or adverse possession, namely, five years uninterrupted, exclusive, and adverse possession. (*Smith v. Hawkins*, 110 Cal. 122, 42 Pac. 453; see, also, Id., 120 Cal. 86, 52 Pac. 139, followed in *Lindblom v. Round Valley*

*Water Co.,* 178 Cal. 450, 173 Pac. 994. See, also, *Deseret Live Stock Co. v. Hoappiania,* 66 Utah, 25, 239 Pac. 479; 1 Wiel on Water Rights in Western States, secs. 574, 575 and 576; 2 Kinney on Irrigation, 2d ed., secs. 1118, 1119.) The reasoning of the above cases by analogy, is applicable herein, and the evidence shows clearly that for no consecutive five-year period between 1916 and the time this action was brought, was there continuous and exclusive use of 150 inches of water on the Kingsbury ranch as distinguished from the Buller ranch, or the two operated as a unit or one whole ranch.

Conceding that where one clearly and unquestionably expresses his intention to transfer water from one parcel of land to another, a party may, if he otherwise has such right, instantaneously and immediately effectuate such transfer, does not offer a criterion where nonuse and use is the only basis for concluding there was such a transfer. By his acts, Martin Albrethsen indicated there was no transfer in 1917. Five years, therefore, had not elapsed in 1920, when the mortgage was given to respondent, and as late as 1920, Martin Albrethsen asked permission of the lessee on the Buller ranch to use Buller water on the Kingsbury ranch, which evidence was not disputed. Hence, in 1920, Martin Albrethsen did not indicate any transfer had been made, and five years did not elapse therefrom until 1922, when the mortgage was given to appellant specifically granting the full 600 inches as appurtenant to the Buller ranch. In 1926 Buttram leased the Buller place and used the full 600 inches on it when water was available from the river, and no one ever demanded any part of the 600 inches from him. Therefore, no five-year period elapsed between 1922 and 1926, and none has elapsed between 1926 and the date of this suit, June 6, 1929.

█ █ It was incumbent on respondent, not appellant, to show what Martin Albrethsen intended, since a party must recover on the strength of his own title, not the weakness of the other party's title. (*Washington State Sugar Co. v. Goodrich,* 27 Ida. 26, 147 Pac. 1073; *Wing v. Wallace,* 42 Ida. 430, 246 Pac. 8; *Steinour v. Oakley State Bank,* 45 Ida.

472, 262 Pac. 1052; *Snell v. Stickler*, 50 Ida. 648, 299 Pac. 1080; *Harris v. Chapman, ante,* p. 283, 5 Pac. (2d) 733, filed Nov. 24, 1931.) Appellant has the record title to the Buller ranch, and 600 inches of the decreed water right appurtenant thereto. Respondent has the record title to part of the Kingsbury ranch, to which a certain definite appropriation was made in the Frost decree. Martin Albrethsen knew better than anyone else what he intended in 1920. When he was present as respondent's witness and not interrogated as to what water he was transferring as appurtenant to the land mortgaged, we must presume that his answer would have been adverse to respondent. (*Garrett v. Neitzel,* 48 Ida. 727, 285 Pac. 472; *Vollmer v. Vollmer,* 46 Ida. 97, 266 Pac. 677.)

■ Since there is no direct evidence in the record that Martin Albrethsen intended to make the 150 inches of water appurtenant to the Kingsbury ranch, the fact that he specified 600 inches of water in the mortgage to appellant in 1922, should be considered as bearing on the question. If he considered the 150 inches appurtenant to the Kingsbury ranch in 1922, when he gave the mortgage to appellant, he was mortgaging water which he had no right to mortgage, since, if appurtenant to the Kingsbury ranch, it had already been mortgaged to respondent in 1920, making the whole transaction fraudulent, which we should not presume. (*Smith v. Johnson,* 47 Ida. 468, 276 Pac. 320; *Nelson v. Krigbaum,* 38 Ida. 716, 721, 226 Pac. 169; *Crumpacker v. Bank of Washington County,* 38 Ida. 534, 223 Pac. 229; *Fehr v. Haworth,* 33 Ida. 96, 98, 190 Pac. 248; *Nelson v. Hudgel,* 23 Ida. 327, 130 Pac. 85.)

■■ There is no evidence of the transfer of water as an entirety or in a specific amount, through different laterals from one ranch to the other by the water-master, or otherwise, nor any such length of time or exclusive use, as in *Harris v. Chapman, supra.* The evidence is too indefinite as to what water was used on the Kingsbury place from the Buller place, to furnish the basis for the decree entered. (*Millheiser v. Long,* 10 N. M. 99, 61 Pac. 111, 115; *Hays v. Buzard,* 31 Mont. 74, 77 Pac. 423.) A party must produce

evidence of a certain definite amount. (*Reno v. Richards,* 32 Ida. 1, 178 Pac. 81.)

We thus conclude that there is no evidence to support the judgment, and the same is reversed and the cause remanded for a new trial. Costs to appellant.

Lee, C. J., and Budge, Varian and McNaughton, JJ., concur.

Petition for modification denied.