CHIEF JUSTICE HARDIN
delivered the opinion op the court.
In November, 1866, John A. Mayes, a young man who had been unsuccessful in business and had become pecuniarily embarrassed, as well as dissipated in his habits, but who still owned real estate which he had inherited, in Graves County, of considerable value, sought the assistance of J. L. Ballinger in effecting a sale of his land for the real or professed purpose of satisfying debts which he owed individually, and also as a member of the mercantile firm of Mayes & Boaz. At that time Mrs. Mary Beadles, a sister of Mayes, and the wife of J. N. Beadles, who resided at Paducah, was sojourning at the home of her widowed mother, Mrs. Elizabeth Mayes, near Mayfield, Kentucky, where John A. Mayes resided when at home. Mayes having authorized Ballinger to sell his land for twenty-five hundred dollars, and Mrs. Beadles having that much money in the hands of the administrators of her father, R. L. Mayes, deceased, as admitted by L. F. Anderson, one of said administrators, Ballinger sought to effect the sale to her, and by correspondence with her husband, then at Paducah, obtained his assent to the purchase, if his wife chose to make it, although he did not regard it as a good investment of her money; and she being appealed to by Ballinger to make the purchase, particularly for the reason that it would enable her brother to relieve himself from debt, after some hesitation agreed to do so, and on the 22d day of November, 1866, accepted Mayes’s deed for the land, and paid him the price in two orders upon said administrators, amounting together to twenty-five hundred dollars, which were promptly accepted and satisfied — one of the orders being for seventeen hundred dollars, and paid in a check on the First National Bank of Paducah, which paid it on presentment, and the other being for eight hundred dollars, which was discharged by a debt Mayes owed one of the administrators.
Miller, Gardner & Co. and Minor & Dallam, creditors of *407 Mayes & Boaz, having sued them in actions at law, which were pending at the date of said sale and conveyance, recovered judgments on their claims shortly afterward, for which executions were issued, and by direction of the plaintiffs’ attorney, who seems to have regarded said sale and conveyance as fraudulent, were levied upon the land as the property of Mayes, and under a writ of venditioni exponas the land was sold on the 15th of April, 1867, and purchased by the plaintiffs jointly at the price of twelve hundred dollars.
On the 1st of January, 1869; the sheriff executed a deed purporting to convey the land to said purchasers; and in March, 1869, Miller, Gardner & Co. and Minor & Dallam brought their suit in equity assailing the deed to Mrs. Beadles as fraudulent and void, it having been made, as they alleged, with intent to hinder, delay, and defraud the creditors of Mayes, and seeking to have it declared void and canceled, and to be quieted in their title and possession. And in the mean time Beadles and wife instituted a proceeding by motion to quash and set aside said sale and conveyance of the sheriff, and that proceeding was transferred to the equity side of the court and consolidated with the other suit, in which Beadles and wife filed their answer, controverting the grounds of relief alleged in the petition, and asserting the title of Mrs. Beadles under the deed from Mayes.
After a somewhat elaborate preparation the causes were heard together, and the court being of the opinion that the sale and conveyance of Mayes to Mrs. Beadles were fraudulent and void, and therefore constituted no obstacle to the levy and sale of the land under the executions, it adjudged that the deed of Mayes be canceled, and that the subsequent sale and conveyance of the sheriff be sustained and upheld, and consequently that the motion to quash them be overruled.
Beadles and wife have appealed to this court for a reversal of that judgment.
*408 The first section of chapter 40 of the Revised Statutes,' which, among other provisions, declares conveyances made with intent to “delay, hinder, or defraud creditors” to be void, is not, so far as applicable to this case, materially different from the act of 1796 to prevent frauds, etc., unless there is a difference in the protection given in each statute to bona fide purchasers, the present law containing this provision: “This section shall not affect the title of a purchaser for valuable consideration unless it appears that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor; ” whereas the saving clause in the old statute is that “this act shall not extend to any estate or interest in any lands, goods, or chattels, or any rents, common or profit, out of the same, which shall be, upon good consideration and bona fide, lawfully conveyed or assured to any person or persons, bodies politic or corporate.”
It is obvious that if there be a difference in the meaning of the two provisions quoted, it is that while under the act of 1796 the purchaser to be affected by the fraudulent intent of his vendor should, as has been held by this court, have acted with' an intention to aid in the fraud (Brown v. Foree, &c., 7 B. Mon. 357), the present law only requires, in order to affect the title of the purchaser, that he should have accepted it with notice of a fraudulent intent on the part of the vendor. But whether the construction of the present statute should or not be influenced by adjudications under the act of 1796, it is plain that if Mrs. Beadles purchased the land for a full and adequate consideration, and in good faith paid the stipulated price, her title could not be affected by any fraudulent intent which may have actuated John A. Mayes in making the sale, unless she had notice, or, in other words, had knowledge of such fraudulent intent on his part when she made the purchase and accepted his deed.
*409 As to the adequacy of the price of the land, we deem it sufficient to say that it is neither alleged nor satisfactorily shown by the proof that twenty-five hundred dollars was not the full cash value of the land. But it is argued for the appellees, from some facts and circumstances tending to show that the administrators of R. L. Mayes did not owe Mrs. Beadles as much as twenty-five hundred dollars at the time, that their acceptance and payment of her drafts for that amount were pretended only, and not real. No maintainable ground for this argument is disclosed in the record. Unless we should disbelieve a number of unimpeached and uncontradicted witnesses, we must conclude not only that the money was actually paid, but that part of it at least was applied to the payment of Mayes’s debts, including balances of the appellees’ claims, which were presented by them against his estate in bankruptcy.
With reference to the motives of John A. Mayes in making the sale and conveyance, it is fair to infer from the facts that as he knew his embarrassed condition, and was already sued by the appellees for debts for which his land would have to be sold under execution, unless disposed of by himself, he intended at least to hinder the appellees in the pursuit of their legal remedy to coerce the payment of their debts, although he may have been actuated by no worse motive than to apply the proceeds of the land to the payment of such of his creditors as he might prefer.
It seems that Mrs. Beadles’s draft for eight hundred dollars was at once applied to the payment of that amount which Mayes owed to L. F. Anderson, and in view of his improvident habits he consented to place the remaining seventeen hundred dollars of the price of the land in the hands of his uncle Lueien Anderson for the benefit of his creditors, who, it appears, made some effort to so apply it; but, failing to do so, paid the money in different sums to Mayes, who used or *410 squandered part of it, and finally surrendered the balance to his assignee in bankruptcy.
But admitting all that the evidence conduces to prove as to the motives and intentions of John A. Mayes in making the sale and conveyance, the vital and essential question still to be determined is, whether or not Mrs. Beadles made the purchase with knowledge that the purpose of Mayes in selling the land was to hinder, delay, or defraud his creditors. There is no direct evidence that she had any information of such a purpose on his part. According to Ballinger’s testimony, she knew he was in debt, and reluctantly made the purchase, partly to enable him to pay his creditors — not to defeat them. The counsel for the appellees has, in the argument, attached much importance to the fact that the parties to the contract seemed to prefer that it should be effected through the intervention of Ballinger rather than negotiated by themselves. But even this circumstance, though perhaps more indicative of unfairness in the transaction than any other disclosed in the record, is, we think, entirely susceptible of explanation consistently with good faith on the part of Mrs. Beadles. The evidence conduces to show that Mayes was often intoxicated, and chafed under the embarrassments his improvidence or misfortunes had caused. Under such circumstances it is not strange that he should have refrained from conversing with his sister in relation to his business, and even at times have avoided her presence.
Upon the whole case we are of the opinion that the evidence is insufficient to sustain the judicial conclusion that Mrs. Beadles either participated in any fraudulent purpose of John A. Mayes, or entered into the contract with him with notice that he intended by the sale and conveyance to her to delay, hinder, or defraud his creditors.
Wherefore the judgment is reversed, and the cause remanded with directions to the court below to dismiss the *411 appellees’ petition, and sustain the motion of the appellants to set aside the sheriff’s sale and conveyance.