S. M. FERGUSON, ET AL. *v.* THOS. P. MAY, ET AL.

[Abstract Kentucky Law Reporter, Vol. 4—989.]

**Fraud of Grantor Does Not Affect a Bona Fide Purchaser.**

The fraud of the grantor in conveying his real estate to defeat his creditors does not affect the title of a purchaser for a valuable consideration, unless he had notice of the fraudulent intent of his immediate grantor or of fraud rendering void the title of the grantor; but where he accepts the conveyance with notice of the fraudulent intent of the grantor, the property so purchased may be subjected to the payment of the debts of the fraudulent vendor.

**Proof of Notice of Fraud.**

The purchaser of real estate sold to defraud creditors may be proved to have had notice of the fraudulent intent of the vendor so as to affect his title, by it being shown that he had direct and positive knowledge of the fraud, or his knowledge of the fraudulent intent of his vendor may be inferred from the existence of certain facts and circumstances that would place an ordinarily prudent man on inquiry.

APPEAL FROM PIKE CIRCUIT COURT.

May 12, 1883.

OPINION BY JUDGE PRYOR:

These several actions, originally at law and subsequently transferred to the equity docket and consolidated, were heard and a judgment rendered against the appellants, of which they complain.

S. W. R. Owens resided in the county of Pike, and was the owner of the farm upon which he lived, alleged to have been of the value of $10,000. On the 22nd of March, 1878, he conveyed this land to the appellant, Ferguson, for the sum of $6,000, and the latter subse-

quently conveyed it to Weddington. This conveyance is assailed by the creditors of Owens in these consolidated actions on the ground that it was made to hinder and defraud his creditors and that Ferguson and Weddington both had notice of the fraudulent intent when they made the purchase and obtained the conveyance.

General Statutes, art. 1, ch. 44, § 1, provides that "This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." It is not necessary under the statute that the purchaser should have purchased with the intention of aiding the vendor in his fraudulent design, but if he accepts the conveyance with notice of the fraudulent intent on the part of the party from whom he is purchasing the property so purchased may be subjected to the payment of the debts of the fraudulent vendor. *Beadles v. Miller,* 9 Bush (Ky.) 405; *Herrin v. Morford,* 9 Dana (Ky.) 450. Notice to the purchaser may be established by proving direct and positive knowledge on his part, or may be inferred from the existence of certain facts and circumstances that would place an ordinarily prudent man on inquiry with reference to the action of his vendor. Facts may exist calculated to create suspicion only, but to affect the purchaser the facts and circumstances must be such as would naturally and justly suggest to an ordinarily prudent man that his vendor was about to perpetrate a fraud on his creditors.

The court below held that the evidence did not show that Ferguson made the trade with the intent of aiding Owens in his fraudulent designs; nor is there any direct evidence that he had notice of Owens' intent when he accepted the deed; and concurring with the chancellor to this extent in his judgment, it will be necessary to consider whether the facts and circumstances proved are such as to evidence to the mind of Ferguson or one of ordinary prudence that the purpose of Owens in selling was to defraud his creditors. It is not required that a purchaser for value should make inquiry of his vendor or others with a view of ascertaining the causes influencing him to sell his property, but facts and circumstances may be brought home to the purchaser of such a character as would authorize the chancellor to say that an ordinarily prudent man under the circumstances must have known of the fraudulent intent on the part of the grantor. The mere fact that the purchaser might have ascertained by inquiry

the object of his vendor is not sufficient. The only question arising in the case is, Did the appellants, Ferguson and Weddington, have notice of the fraudulent intent of Owens. That the latter was making a disposition of his entire estate in order to avoid the payment of his debts is clearly shown by the proof, but that appellants or either of them had notice of the fraudulent purpose is certainly a question of much doubt, with the decided preponderance of the testimony in behalf of the appellants.

Under the facts of this case notice to Ferguson was notice to Weddington, his vendee, as the one was in the possession of and informed of all the facts that the other had. The land was actually purchased for Weddington with the understanding that he was to have the land, and he was present when the conveyance was made and the price paid. It seems that Owens was involved in debt and owned the tract of land in controversy upon which he lived, a distance of some three or four miles from the residence of Ferguson, who lived in the county of Floyd, that Owens left his home for the South in the fall of 1877, with a drove of horses and mules for Dills, one of the appellees in this case and a principal creditor of Owens. He sold the stock and on his return on the 22nd of March, 1878, in going up the Big Sandy river, the boat upon which he was a passenger ran aground opposite the residence of Ferguson, and Owens left the boat, going from it to the house of Ferguson. The wife of Owens was sent for as well as Weddington, Ferguson going after a deputy clerk of Pike county who lived some distance from the county-seat for the purpose of having the conveyance of the land properly acknowledged. He paid to Owens $2,000 in money, and executed a conveyance to Owen's wife for a tract of land in Missouri valued at $4,000, making in all $6,000 paid for the farm. The clerk came with Ferguson, and after night the parties went over to Pike county, the dividing line between Pike and Floyd counties being near Ferguson's home, and in an old mill acknowledged the deeds, Owens and wife the one to the land in Pike, and Ferguson and wife the one to the land in Missouri. The money was then paid, and early in the morning Owens and his son left in a canoe down the river in an opposite direction from home. On the same day that he purchased the land Ferguson prepared a writing by which Owens transferred to his son the goods and chattels on his, Owens', farm, in consideration of $200. The creditors of Owens, believing that he was attempt-

ing to defraud them, had him arrested and obtained from him over $3,000 in money.

This testimony unexplained would warrant the conclusion reached by the chancellor below; but when analyzing the entire proof this court would be reluctant to say that the circumstances, when all understood, were sufficient to satisfy the mind of the chancellor that Ferguson had notice of Owens' fraudulent intention. If the trade had been conducted and consummated in the brief time and in the manner as developed by the proof of the appellees, there could be no doubt of the knowledge on the part of Ferguson as to the fraud of Owens. It appears, however, that this conveyance was made in March, 1878, in pursuance to a parol agreement well understood by the parties themselves and their neighbors and by some of the creditors as far back as the fall of 1877. The price to be paid as the difference in the exchange of the Missouri land for the Pike county farm, viz., $2,000, was at that time agreed on, and the only reason why the trade was not consummated in the fall of 1877, or before Owens left for the South, was that the lawyer who was to prepare the deeds failed to go to Owens' house on the day fixed and Owens was compelled to leave for the South with a drove of mules and horses then under his charge and in which he had some interest. The fact of the purchase or the agreement was not concealed at the time, and seems to have been talked of by several of Owens' creditors, as well as others. Owens was at the time and up to the date of this conveyance regarded as a man of high personal integrity, and above even a suspicion that he would prove guilty of such unpardonable conduct. Dills, one of the appellees in this case and a principal creditor, entrusted him with the horses and mules that he was taking South of the value of several thousand dollars, and while involved in debt and sued no one doubted his honor until his attempt to leave the state after he obtained Ferguson's money.

Ferguson was dealing with this character of man as he appeared not only to Ferguson but to his creditors; and after his return from the South on his way home when the boat ran aground opposite Ferguson's home it was not unreasonable that he should go to the house or consummate the trade when he reached there. He sent for his wife to come to Ferguson's, and the latter went after the clerk or his deputy, who lived some distance from the county-seat of Pike county, to have the conveyances acknowledged. The clerk came,

and as Ferguson's house was near the line of Floyd and Pike counties but in Floyd it became necessary for the parties to leave the house and cross over the line into Pike county that the clerk of Pike county might take the acknowledgment. This was, it is true, done after night, but it clearly appears from the testimony of the clerk that Ferguson wanted him to remain until morning and then transact the business, but the clerk declined to do so, and stated that he could not return the next day.

Ferguson and Weddington both state that they had no knowledge of any fraudulent intention on the part of Owens and were lead to believe that his purpose was to settle with his creditors, Owens remarking that he wanted the house on the place for three weeks as it would take him that long to settle up his business. It is true that Ferguson's testimony is vindicating his own conduct with reference to the transaction, but we see nothing in his statement inconsistent with the best of faith. He had no reason even to suspect Owens of any improper conduct, much less to put him upon inquiry as whether he intended by the sale to him to defraud his creditors. Owens stood as high as Ferguson or any of his creditors, and they all had the right to confide in his honesty, if not in his ability to pay his debts. Ferguson says he knew that he was in debt $3,000 or $4,000, and also knew that he was going to Missouri, but it is evident that he was satisfied it was Owens' purpose to arrange with his creditors before he left. After a rigid cross-examination by counsel for the appellees the appellant, Ferguson, seems to have made a candid statement of the facts as they transpired, whether for or against him, and his testimony is in striking contrast in this regard with that of two or more of the witnesses for the appellees introduced for the purpose of showing a guilty knowledge on the part of Ferguson. No man in the vicinity of Ferguson's residence would have hesitated to contract with Owens in reference to his estate at the time the purchase was made by Ferguson, and it is the subsequent conduct of Owens developing his fraudulent purpose that is made to operate to the prejudice of appellants, and to carry conviction of guilt on their part when but for his haste in leaving the state there would have been no room for suspicion, even against either Ferguson or Weddington.

The transfer of his personal property by Owens to his son was made at Ferguson's house all with the view of his departure to Mis-

souri, and without other evidence against appellants that his purpose was to take his money and leave the state without paying his debts the conclusion ought not to be reached that these appellants were participating in the fraud or knew of Owens' intention to practice the fraud. He then had $3,000 in addition to what Ferguson paid him, of which fact Ferguson was apprised, and it·was but rational on the part of Ferguson to conclude that he would settle all of his business matters before leaving. The Missouri land of four hundred acres was valued at $4,000 and Owens' farm at $6,000. It is now urged that the Owens land was worth at least $8,000, and Ferguson states that he had sold a part of his Missouri land at $20 per acre, and that it could have been sold for over $4,000. It is not pretended that he placed too high an estimate on the valuation of the Missouri land, and in addition there is testimony conducing to show that he paid as much as the Owens farm was worth. If both tracts were valued at less than they were· worth there was no advantage on the part of either, and the fact that the Missouri land was conveyed to the wife of Owens was not evidence to Ferguson that he proposed to take the $5,000 then in his pocket to Missouri and leave his debts in the county unpaid. The previous character of the man forbids any such conclusion or notice to the purchaser. The recording of the conveyance the next day where several of the creditors lived instead of being evidence of undue haste on the part of Ferguson indicated a willingness on his part to make public the transaction, and it was in fact the recording of this deed that induced the creditors to make inquiry in regard to Owens.

A purchaser in good faith for value is to be favored by the law, and a mere want of caution in ascertaining what the vendor wants. with the money or how he intends to apply it will not fix notice on the purchaser, but notice may be inferred from facts and circumstances, as well as from actual proof. The presumption of innocence is in favor of appellants, and to rebut this the circumstances must be such as to satisfy the mind that he had notice of Owens' intention to defraud his creditors. There is nothing in this case inconsistent with the utmost good faith on the part of Ferguson, and the accidental grounding of the boat at or near the home of Ferguson no doubt 'suggested to Owens that it was then a convenient time to consummate a contract they had agreed upon months before. This verbal contract was publicly known, and in dealing with Owens, who

at the time sustained an unblemished reputation, there was no reason for exercising even the slightest caution in regard to his future purposes.

This judgment must therefore be *reversed* and the cause remanded with directions to dismiss the proceedings in so far as appellees seek to subject this land to the payment of appellees' debts. *Beadles v. Miller,* 9 Bush (Ky.) 405.

Judge Hargis not sitting.

*R. C. Burns, K. F. Prichard, Wm. Lindsey, for appellants.*

*George N. Brown, W. C. Ireland, for appellees.*