(September 10, 1913.)

## A. G. KERNS, Appellant, v. WASHINGTON WATER POWER COMPANY, Respondent, and WALTER S. GASKILL and ELLA MAUD GASKILL, Defendants.

·[135 Pac. 70.]

FRAUDULENT CONVEYANCE—SETTING ASIDE DEED—PURPOSE AND INTENT OF PARTIES—CONSIDERATION—JUDGMENT—SATISFACTION — COMPROMISE—LIEN OF ATTORNEY.

1. Where a judgment in an action does not run in favor of the attorney in the action, but in favor of the attorney's client, the plaintiff, and the judgment is allowed for the purpose of compensating the client in the amount it is necessary for him to pay his attorney for prosecuting his action, the presumption is that the client has paid the attorney or is liable to pay him. The judgment entered belongs to the judgment creditor, and may be paid to him, and he may satisfy the same; he may compromise the judgment, or, if he sees fit to do so, he may give it to the judgment debtor.

This, however, does not release the client from the obligation to pay the attorney any fee that he may owe him for the service. The obligation and liability of the client to the attorney, if not otherwise secured, is merely a personal liability of the client to the attorney.

2. Prior to the enactment of the act approved March 7, 1911, Sess. Laws 1911–12, p. 563, there was no law of this state which provided for a lien for attorneys' fees. The latter act, however, provides that from the commencement of an action or the service of an answer containing a counterclaim the attorney who appears for a party has a lien upon his client's cause of action or counterclaim which attaches to a verdict, report, decision or judgment in his client's favor, and cannot be affected by any settlement between the parties before or after judgment.

3. In an action to set aside a deed of real property, where it is alleged, and evidence is offered to prove the allegation, that said deed was made and accepted for the purpose of hindering, delaying and defrauding the plaintiff, the rule of law which especially applies to such case is, that fraud is not presumed, but must be established by clear and convincing evidence, and this is especially true where a party assails the integrity of a written instrument.

4. The rule of law that governs a transaction and affects the validity of a deed of conveyance of real property, where the complaint alleges that the deed was made and accepted for the purpose of hindering, delaying and defrauding the plaintiff, and the evidence shows that there was no fraud and that a valuable consideration has been paid for the property, is, that the sale cannot be set aside at the instance of a creditor unless it is averred and shown that the purchaser knew of and participated in the fraudulent intent of the seller.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County. Hon. R. N. Dunn, Judge.

An action to cancel and set aside a deed on the ground of fraud. *Judgment affirmed.*

Black & Wernette, for Appellant.

"A judgment creditor issuing execution and levying upon and selling land which his judgment debtor has previously conveyed by a deed voidable as to him because of fraud ren-

ders the conveyance absolutely void, and vests the legal title in the purchaser at the execution sale.'' (*Wagner v. Law,* 3 Wash. 500, 28 Am. St. 56, 28 Pac. 1109, 29 Pac. 927, 15 L. R. A. 784.)

''A transferee of property from an insolvent debtor holds subject to creditors' rights where at or before the transfer he has notice of such facts and circumstances as would arouse the suspicion of an ordinarily prudent man and cause him to make such inquiry as to the purpose of the transfer as would disclose the fraudulent intent of the maker, although he has no actual notice of such intent.'' (*Kansas Moline Plow Co. v. Sherman,* 3 Okl. 204, 41 Pac. 623, 32 L. R. A. 33; *Spear v. Joyce,* 27 Ill. App. 456; *Ferguson v. May,* 4 Ky. Law Rep. 989; *Burgert v. Borchert,* 59 Mo. 80.)

''A purchaser from a debtor selling to defraud his creditors is bound by such knowledge as would put a prudent man upon inquiry.'' (*Brittain v. Crowther,* 54 Fed. 295, 4 C. C. A. 341.)

''Constructive notice is all that is necessary.'' (*Singer Baer & Co. v. Jacobs,* 11 Fed. 559, 3 McCrary, 638; *Dyer v. Taylor,* 50 Ark. 314, 7 S. W. 258.)

It is enough if it be shown that the purchaser had knowledge of such facts as should charge him with notice of the fraudulent intent of the seller. (*Lyons v. Hamilton,* 69 Iowa, 47, 28 N. W. 429.)

''Participation in the fraud is not necessary.'' (*Bedford v. Penny,* 58 Mich. 424, 25 N. W. 381.)

''Courts of equity do not permit a party to claim any benefit from his own ignorance of facts which he could have learned by exercise of ordinary prudence and diligence.'' (*Balfour v. Parkinson,* 84 Fed. 855; *Reddin v. Dunn,* 2 Colo. App. 518, 31 Pac. 947.)

''It is generally impossible to ascertain the actual intent that was in the mind of the debtor when he transferred his property. It is rather the inference of intent which the law draws from the acts of the debtor viewed in the light of circumstances and conditions under which he acted, and the re-

sult accomplished by those acts." (*California M. Co. v. Manley,* 10 Ida. 786, 81 Pac. 50.)

John P. Gray, F. T. Post and Chas. L. Heitman, for Respondent.

A person indebted to other creditors has a perfect right to sell and dispose of his property, and no action can be maintained against the grantee by creditors unless the conveyance was made with the intent of both the grantee and grantor to prevent his application of the proceeds of the sale to the payment of the grantor's indebtedness.

Litigants have a perfect right to settle the cause of action, or to take a conveyance from the other upon paying a valuable consideration, without notifying the attorneys that they intend to do so or have completed such negotiations. (*Dahlstrom v. Featherstone,* 18 Ida. 179, 110 Pac. 243; *Pippin v. Tapia,* 148 Ala. 353, 42 So. 545; *Valdosta Mercantile Co. v. White,* 52 Fla. 453, 42 So. 633; *Williams v. Finlayson,* 49 Fla. 204, 39 So. 50; *Meyers v. Martinez,* 162 Ala. 562, 50 So. 351; *Shumaker v. Davidson,* 116 Iowa, 569, 87 N. W. 441; *Vance Shoe Co. v. Haught,* 41 W. Va. 275, 23 S. E. 553; *Atlantic Refining Co. v. Stokes,* 77 N. J. Eq. 119, 75 Atl. 445; *Calvert v. Alvey,* 152 N. C. 610, 136 Am. St. 847, 68 S. E. 153; *Ellet-Kendall Shoe Co. v. Ross et al.,* 28 Okl. 697, 115 Pac. 893.)

The facts upon which fraud is predicated must be specifically pleaded. A mere general averment of fraud is nothing but the averment of a conclusion, and will not suffice. It presents no issue for trial and is bad on demurrer. (*Leavengood v. McGee,* 50 Or. 233, 91 Pac. 453; *Little v. Sterne,* 125 Ala. 609, 27 So. 972; *Virginia Timber & Lumber Co. v. Glenwood Co.,* 5 Cal. App. 256, 90 Pac. 48; *Pehrson v. Hewett,* 79 Cal. 594, 21 Pac. 950; *Wilson v. Boone,* 136 Ind. 142, 35 N. E. 1096; *Coal City Coal & Coke Co. v. Hazard Powder Co.,* 108 Ala. 218, 19 So. 392; *Vickers v. Buck Stove & Range Co.,* 60 Kan. 598, 57 Pac. 517.)

It is not stated in the amended complaint whether there was an encumbrance against the property, whether there were

taxes due thereon, or other liens against the same, and in the absence of such allegations the court will not say but what the consideration in this case was a full consideration for the rights transferred. (*Day v. Cole,* 44 Iowa, 452; *Mullins v. Hands,* 17 Ky. Law Rep. 612, 31 S. W. 726; *Martin v. White,* 115 Ga. 866, 42 S. E. 279; *Jones v. Dunbar,* 52 Neb. 151, 71 N. W. 976; *Brown v. Case,* 41 Or. 221, 69 Pac. 43; *Albertoli v. Branham,* 80 Cal. 631, 13 Am. St. 200, 22 Pac. 404; *Roberts v. Burr,* 135 Cal. 156, 67 Pac. 46; *Levy v. Scott,* 115 Cal. 39, 46 Pac. 892; *Motz v. Sheets,* 144 Iowa, 243, 122 N. W. 904; *Wolf v. Arthur,* 118 N. C. 890, 24 S. E. 671; *Wachovia Loan & Trust Co. v. Forbes,* 120 N. C. 355, 27 S. E. 43.)

STEWART, J.—This is an appeal from a judgment of dismissal entered by the district court of Kootenai county after the court had entered an order sustaining the demurrer to the amended complaint and the plaintiff refused to amend. The Washington Water Power Company, respondent, was the only defendant named in the complaint that appeared in the case, and it was this company that filed the demurrer.

The material allegations of the complaint are as follows:

1. That the defendant, the Washington Water Power Company, is now, and at all the times named was a corporation, duly organized and existing under the laws of the state of Washington for the purpose of manufacturing and selling electricity and purchasing such real estate as was necessary for that purpose, and that during the said period of time the said defendant was doing business in Kootenai county, Idaho.

3. That the plaintiff is an attorney at law admitted to practice in all the courts of Idaho.

4. That on May 1, 1908, the plaintiff, as such attorney and as attorney for the defendant Walter S. Gaskill, filed a complaint in writing in the district court in the name of the defendant Gaskill against the company (the Washington Water Power Company will hereafter be referred to as the company), wherein and whereby Gaskill sought to recover from the company damages for injury to certain real property in Kootenai county, containing 120 acres, by overflow thereof

with water by the company by means of a dam in the Spokane river at Post Falls, and an injunction against the continuance of said damages, and that the defendant appeared and claimed that it had a lawful right to take and appropriate to its own use about 34½ acres of said land under an elevation of 2,128 feet above sea level; and such proceedings were thereafter had in said cause that on August 3, 1908, the court made an order appointing a referee and testimony was taken to assess the damages that plaintiff was entitled to, and providing that if such sum was paid and the costs no injunction should issue; and thereafter such proceedings were had that on November 18, 1908, the referee filed his findings and awarded the plaintiff the sum of $2,552.85 and costs; and such proceedings were thereafter had in said cause that on March 3, 1909, the court made an order confirming the findings and award of the referee and directing that the plaintiff make, execute and acknowledge a deed to 34½ acres of land overflowed by defendant, granting to the defendant in perpetuity the right to overflow such lands upon the defendant paying to the plaintiff the amount of said award; that said judgment still stands of record unsatisfied, except as to the sum of $325.50 costs paid by order of the court.

5. That thereafter the company prosecuted an appeal therefrom to the supreme court of the state of Idaho, where, on October 29, 1909, said judgment was affirmed, and the company thereupon prosecuted an appeal from said judgment to the supreme court of the United States, and during all this time plaintiff was the attorney of record of Gaskill and said fact was well known to the defendant company.

6. That on the 18th day of June, 1910, and while said appeal was pending and undetermined, the defendant company, Gaskill and wife (who are defendants in this action), made and entered into an agreement for the sale of the whole of said 120 acres of land by Walter S. Gaskill and Ella Maud Gaskill to the company, and the satisfaction of said judgment and for the sum of $5,000, and pursuant to said agreement Gaskill and wife made, executed and delivered to the company a deed in writing purporting to convey the above

described 120 acres to the company and the company paid Gaskill and wife the sum of $5,000.

7. That at the time of making said agreement and convey- ance and the payment of said consideration the defendant company had no legal capacity to take or hold the title to any portion of the land except the 34½ acres thereof lying under an elevation of 2,128 feet above sea level in accordance with and for the uses and purposes described in the decree and judgment rendered March 13, 1909, and the consideration paid by the company to Gaskill and wife for the remaining lands, to wit, 85½ acres, was grossly inadequate and incom- mensurate with the value of said lands and the improvements thereof, which were of the value of more than $4,000.

7. (a.) That on the 18th day of June, 1910, at the time of the making of said deed and the payment of said considera- tion, the defendant Walter S. Gaskill was justly indebted to the plaintiff in the sum of $672.70 upon a balance of ac- count for services rendered and performed by this plaintiff for said Walter S. Gaskill at the special instance and request of said Gaskill in the prosecution of said action against the company, and the company had full notice and knowledge of said indebtedness and that it had not been paid.

8. That on the 22d day of June, 1910, this plaintiff com- menced an action against Walter S. Gaskill in the district court of Shoshone county for the recovery of said sum of $672.70, and made and filed in said action a duly verified complaint in writing and a verified affidavit for attachment in due form of law, and made and filed therein an undertak- ing on attachment in due form of law, and thereupon a sum- mons and a writ of attachment and an *alias* writ of attach- ment directed to the sheriff issued therein, and that summons was served personally on the defendant Gaskill, and that the *alias* writ of attachment was duly and regularly levied upon the above-described 120 acres of land standing on the rec- ords of Kootenai county, state of Idaho, in the name of the company, as the property of defendant Walter S. Gaskill, by filing with the county recorder of Kootenai county a copy of the attachment and by delivering a copy of the writ to the

occupant of the premises, and due return of his actions under the writ and summons was made by the sheriff; that such proceedings were duly and regularly had in the cause that on the 16th day of August, 1910, judgment was duly and regularly rendered and entered in said cause in favor of the plaintiff Kerns against the defendant, Walter S. Gaskill, for the aggregate sum of $730.30, with interest at 7 per cent; that thereafter on September 2, 1910, a writ of execution was issued and the sheriff of Kootenai county was commanded and required to make the amount of the judgment and the accrued costs out of the property of Gaskill; and thereupon the sheriff levied upon and noticed for sale said premises, and on October 1, 1910, sold said premises to Kerns for the amount of the judgment with interest, amounting to $779.60; that no redemption was made of said premises during the period of one year after the date of said sale, or at all, and on the 3d day of October, 1911, a sheriff's deed for said premises was executed, acknowledged and delivered to the plaintiff.

8. (a.) That during the period said execution was in the hands of the sheriff for service Gaskill had no other property in the state than the above-described premises and did not possess other property subject to execution at the time of the conveyance of the premises to the company sufficient for the payment of the debt of plaintiff, and does not now, and has not at any time, had sufficient other property subject to execution to pay said indebtedness.

9. That the deed executed and delivered by Gaskill to the company was made and accepted for the purpose of hindering, delaying and defrauding plaintiff of said indebtedness and the enforcement of the payment thereof, and that said defendant company had actual notice and knowledge of the claim of the plaintiff at the time of said transaction.

10. That at the time of the making and acceptance of said deed and at all times since the defendant company had no legal capacity under its articles of incorporation and the laws of the state to take or hold or acquire the title to any portion of said premises except 34½ acres thereof lying below an elevation of 2,128 feet above sea level, and that said de-

fendant has never at any time used or occupied the remaining 85½ acres of said land for the purpose of its incorporation or for any lawful purpose.

Upon these allegations the complaint prays for judgment: "That the deed executed by Gaskill and wife to the Washington Water Power Company be vacated, set aside and annulled as against this plaintiff; and that the plaintiff be decreed to be the owner of said premises subject to the terms of the decree of March 13, 1909, here referred to, and that the title of plaintiff thereto be quieted and confirmed as against the defendants and each of them and all persons claiming by, through or under them or either of them," and for costs.

To this amended complaint a demurrer was filed stating the grounds as follows: That said amended complaint does not state facts sufficient to constitute a cause of action. This demurrer was sustained.

Counsel for appellant contends that the amended complaint states a good and sufficient cause of action against the company, and calls attention to the following authorities: *Wagner v. Law*, 3 Wash. 500, 28 Am. St. 56, 28 Pac. 1109, 29 Pac. 927, 15 L. R. A. 784; *Kansas Moline Plow Co. v. Sherman*, 3 Okl. 204, 41 Pac. 623, 32 L. R. A. 33; *Spear v. Joyce*, 27 Ill. App. 456; *Ferguson v. May*, 4 Ky. Law Rep. 989; *Singer v. Jacobs*, 11 Fed. 559, 3 McCrary, 638; *Dyer v. Taylor*, 50 Ark. 314, 7 S. W. 258; *Bedford v. Penny*, 58 Mich. 424, 25 N. W. 381; *Balfour v. Parkinson*, 84 Fed. 855; *California M. Co. v. Manley*, 10 Ida. 786, 81 Pac. 50; 2 Moore on Fraudulent Conveyances, p. 953, sec. 44; sec. 3169, Rev. Codes.

Other cases are cited, but the above are the principal ones relied upon.

The foregoing authorities state the rule relied upon by appellant which it is claimed governs the facts in the present case, but in our opinion such rule is not applicable to the facts in this case.

It is proper at this time to call attention to the particular language of paragraph 9 of the complaint, which is the only allegation of fraud and notice, and in that paragraph it is

alleged that such deed "was made and accepted for the purpose of hindering, delaying and defrauding this plaintiff of said indebtedness and the enforcement of the payment thereof, and that said defendant Washington Water Power Company had actual notice and knowledge of the claim of the plaintiff at the time of said transaction."

This allegation clearly states that the deed was made and accepted for the purpose of hindering, delaying and defrauding the plaintiff of said indebtedness and the enforcement of the payment thereof. The statement following does not allege any facts showing that the company purchased the land for the purpose of hindering, delaying or defrauding the plaintiff, but does allege a conclusion, and the latter part of the paragraph alleges that the company knew that the plaintiff had a claim against the grantor at that time.

In this contention the allegations contained in paragraph 6 of the complaint clearly indicate the purpose and intent of the company and refute the contention of the appellant as to the purpose of making the deed so far as the company was concerned. Such paragraph contains this allegation: "That on or about the 18th of June, 1910 . . . . the defendant Washington Water Power Company, Walter S. Gaskill and Ella Maud Gaskill made and entered into an agreement for the sale of the whole of said 120 acres of land by said Walter S. Gaskill and Ella Maud Gaskill to the Washington Water Power Company, and the satisfaction of said judgment for the sum of Five Thousand Dollars, and pursuant to said agreement the said Walter S. Gaskill and Ella Maud Gaskill made, executed and delivered to the Washington Water Power Company a deed in writing purporting to convey the above described 120 acres to the Washington Water Power Company and the Washington Water Power Company paid to Gaskill and wife the said sum of Five Thousand Dollars."

At that time the company was indebted to Gaskill by reason of the judgment in the sum of $2,522.85 and costs. The respondent contends the complaint does not allege that any confidential relation existed between Gaskill and the company at the time the conveyance was made, or at any time prior or

subsequent thereto; that the litigation between Gaskill and the company was on account of damages alleged to have been done to the particular land involved, and the effect of the transfer was to settle the litigation; that no fraud can be imputed to the company because of the settlement of such controversy; that the complaint does not allege that at the time the transfer was made the defendant had, by attachment or otherwise, secured any hold or lien upon the property transferred, but does allege the commencement of the plaintiff's action against Gaskill to recover the fees due him in the litigation and the issuance of the writ of attachment on the 22d day of June, 1910, four days after the sale of the property to the company. Respondent contends also that the parties to the suit had a right to settle the action, and that the conveyance was only a part of the consideration paid in the settlement, and that this could be done without notifying the attorney for plaintiff of such intention or right.

This latter question seems to be disposed of by this court in the case of *Dahlstrom v. Featherstone,* 18 Ida. 179, 110 Pac. 243, in which this court says:

"The judgment entered belongs to the judgment creditor and may be paid to him, and he may satisfy the same, he may compromise the judgment, or, if he sees fit to do so, may give it to the judgment debtor. This, however, would not release the client from the obligation to pay the attorney the balance of any fee that he may owe him for the services. The obligation and liability, however, if not otherwise secured, is merely a personal liability of the client to the attorney."

In the latter case this court, in commenting upon the acts of the attorney in such matters, says:

"Where he fails, however, to give notice to the judgment debtor or to take the necessary steps prior to the payment or satisfaction of the judgment in the statutory manner, he has no such standing as a party to the action as will enable him to come in by a summary proceeding and have the satisfaction of the judgment vacated and he himself substituted as a judgment creditor for a share of the original judgment."

Prior to the enactment of the act approved March 7, 1911, Sess. Laws 1911–12, p. 563, there was no law in this state which provided for a lien for attorney's fees. The latter act, however, provides: "From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment; but parties to actions or proceedings are entitled to costs and disbursements, as hereinafter provided."

In the case above quoted we think this court has laid down the correct rule applicable to this case, as the present action was commenced prior to the statute of March 7, 1911.

In this connection, we call attention to the allegation in the complaint, that plaintiff was employed as an attorney for Gaskill and secured the judgment against the company on the 13th day of March, 1909, and that the same was affirmed on appeal by this court on the 29th day of October, 1909, and as shown in this opinion was appealed to the federal court and there settled as above stated; that the settlement and execution of the deed was on the 18th day of June, 1910, and that the plaintiff commenced an action against Gaskill to recover attorney's fees on the 22d day of June, 1910. From these facts alleged in the complaint, it is apparent that when the deed was made and the settlement of the judgment was entered into and the company paid an additional sum in discharge of the judgment as purchase money for the remainder of the tract owned by Gaskill, in addition to the amount allowed by the judgment as the value of the property taken by the action of Gaskill against the company, that the intent and purpose of the company was to secure the entire tract so that there could be no further litigation over the flooding of said land owned by Gaskill before the transfer, and that both parties were acting in perfect good faith and did not intend to defraud the plaintiff, and that at that time the land trans-

ferred was not encumbered with any lien or claim of the plaintiff for the services that were rendered and for which he brought suit and attached the land and secured title under the sale of said property, and that from such facts it clearly appears that the plaintiff acquired no title by attachment or sale or the deed upon the sale.

In the case of *Dahlstrom v. Featherstone, supra,* this court had under consideration the fee of an attorney and the right of the client to satisfy the judgment obtained in the suit in which the attorney was employed, and this court said: ''This judgment does not run in favor of the attorney, but in favor of his client, and is allowed for the purpose of compensating the client in the amount it is necessary for him to pay his attorney for prosecuting his action. The presumption of law is that the client has already either paid his attorney this sum or has become liable to the attorney for that amount. As a matter of fact, in practice the attorney receives a part of the amount in cash at the time or before the rendering of the services, and expects to wait until the judgment is collected for the balance of his fee. In the meanwhile, however, the judgment entered belongs to the judgment creditor and may be paid to him, and he may satisfy the same, he may compromise the judgment, or, if he sees fit to do so, may give it to the judgment debtor. This, however, would not release the client from the obligation to pay the attorney the balance of any fee that he may owe him for the service. The obligation and liability, however, if not otherwise secured, is a mere personal liability of the client to the attorney.''

This latter case disposes of the contention that the plaintiff in this case acquired or had any claim, right, lien or title against the property conveyed, or any property that Gaskill owned at the time the conveyance in controversy was executed and delivered, unless the allegation standing alone is sufficient to constitute a cause of action to support a judgment setting aside the deed in controversy.

We now come to the question whether the allegations of the complaint are sufficient as to fraud on the part of the company in accepting the deed for the land in controversy, or

participating in any fraud or knowing that the grantor Gaskill intended to fraudulently convey said property for the purpose of defrauding his creditor.

In the case of *Nelson v. Hudgel,* 23 Ida. 327, 130 Pac. 85, this court, in discussing fraud, announced this rule: "There is also another rule of law which especially applies to this case, that fraud is never presumed, but must be established by clear and convincing evidence, and that this is especially true where a party assails the integrity of a written instrument."

The rule that governs a transaction and affects the validity of a deed of conveyance of real property where the allegations of the complaint show no fraud on the part of the grantee, and such allegations are considered together with the evidence, is announced by the supreme court of Alabama in the case of *Pippin v. Tapia,* 148 Ala. 353, 42 So. 545, as follows: "The bill does not aver that the deed was made 'with the intent to hinder, delay or defraud' the defendant, or any creditor of the grantor, and even if the bill contained such an allegation, and it were proved, the sale could not be set aside at the instance of a creditor, where a valuable consideration has been paid for the property, unless it were averred and shown, that the purchaser knew of and participated in the fraudulent intent of the seller."

The correct rule as to the evidence in a case of this kind and character is as follows: "Fraud is never presumed, but must be proved by clear and satisfactory evidence by the party asserting it; and if the facts and circumstances from which the alleged fraud is supposed to arise may reasonably consist with honest intentions, it will not be imputed." (*Allen v. Riddle,* 141 Ala. 621, 37 So. 680.)

In 20 Cyc. 465, the author very clearly states the accomplishment of purpose: "A fraudulent intent alone is not sufficient; there must be superadded to it, in addition to the sale or conveyance, actual fraud, hindrance or delay resulting therefrom to the creditor. Fraud does not consist in mere intention, but in intention acted out by conduct that operates prejudicially on the rights of others, and which was intended to have such effect."

Applying this rule to the facts alleged in the complaint, we are of the opinion that such facts clearly and conclusively refute any intention that was acted out by conduct that operated prejudicially on the right of plaintiff and which was intended by the parties to have such effect when the settlement was made and the deed executed and delivered.

Many other cases might be cited supporting this doctrine: *Vance Shoe Co. v. Haught*, 41 W. Va. 275, 23 S. E. 553; *Atlantic Refining Co. v. Stokes*, 77 N. J. Eq. 119, 75 Atl. 445; *Calvert v. Alvey*, 152 N. C. 610, 136 Am. St. 847, 68 S. E. 153.

In this latter case the court said: "There is nothing in the way of proof to indicate that Mrs. Alvey knew of or participated in any fraudulent intent on the part of the Penlands, assuming their purpose was to delay, hinder and defraud the bank in the collection of its debt. It seems to be settled beyond controversy that knowledge of or participation therein by the grantee of fraud of the grantor is essential to set aside or vacate a deed."

The supreme court of Oregon very clearly states the rule which should be applied to this case in the case of *Leavengood v. McGee*, 50 Or. 233, 91 Pac. 453: "There must be alleged and proven facts out of which a constructive fraud will arise by force of law, or facts constituting actual or expressed fraud, and the rule is that the facts upon which fraud is predicated must be specifically pleaded. A mere general averment of fraud is nothing but the averment of a conclusion, and will not suffice. It presents no issue for trial and is bad on demurrer."

In 20 Cyc. 465, the author refers specifically to the rule where there is a valuable consideration: "If a transfer is for a valuable consideration, creditors cannot attack it because of the fraudulent intent of the grantor, where the grantee neither had (1) actual notice of such intent, nor (2) notice of any fact or facts calculated to put him on inquiry and which would lead to a discovery of such intent, nor (3) participated in the fraud."

The appellant in this case, if he had doubt about the collection of his fee, should have taken steps to collect the same and

secure himself prior to the transfer of said property to the respondent. It is alleged in the complaint that the plaintiff, as such attorney, filed the complaint for Gaskill on May 1, 1908, and that the conveyance to respondent was made on June 18, 1910, over two years after he filed the complaint for Gaskill, and from the acts of the parties to the agreement of sale and the execution of the deed the facts alleged clearly show that the deed was not voluntary, but was executed for a valuable consideration paid by the respondent, and the facts do not show that any part of the consideration was retained by the respondent for the purpose of paying creditors or that any creditor was preferred or that the money was for any purpose except as a consideration for the purchase of the land and the settlement of the judgment.

For these reasons the judgment is *affirmed.* Costs awarded to respondent.

Ailshie, C. J., and Sullivan, J., concur.