(No. 6493.   December 2, 1937.)

KATHRYN GREEN and JAMES H. GREEN, Respondents,
v. EDWARD BRUCK and BERTHA F. BRUCK, Husband and Wife, Appellants.

[74 Pac. (2d) 85.]

J. Ward Arney, for Appellants.

Whitla & Knudson, for Respondents.

MORGAN, C. J.—This is an appeal from a decree foreclosing a mortgage on land in Kootenai county. The mortgage was given by appellants, July 22, 1932, to secure payment of a promissory note of even date therewith to C. H. Melson, three years after date. December 6, 1935, when the debt was past due, Melson sold and assigned the note and mortgage, for a valuable consideration, to respondent Kathryn Green. The note and mortgage were given to Melson by appellants to evidence their indebtedness and secure payment to him by them of $3,000 for 110,000 shares of stock in Crow's Nest Oil Company. In their answer appellants alleged failure of consideration for the note and mortgage and fraud practiced

upon them by Melson and others in procuring its execution and delivery. The trial resulted in a decree foreclosing the mortgage.

Respondents introduced the note, mortgage and assignment in evidence; proved nonpayment of the debt, stipulated with appellants with respect to the attorney fee, and rested. Appellant, Edward Bruck, in support of the defense of fraud and failure of consideration, testified to the circumstances leading up to the execution and delivery of the mortgage. From his testimony it appears that since 1915 he had been a stockholder in Crow's Nest Oil Company; that Melson knew he was a stockholder; that in June, 1932, a man named Kendall called him on the telephone and told him he was from Crow's Nest Oil Company and was sent by its president to urge the stockholders to buy as much stock as possible, and wanted to meet him at Mr. Gibbs' office; that the next morning he met Kendall at Gibbs' office; that Kendall, Gibbs and Bruck were present and the latter stated he had no money with which to buy stock; that Gibbs was dealing in Crow's Nest Oil Company stock and stated Bruck had property and could try to raise money that way with which to buy; that during the conversation Kendall called Ben Stimmel on the telephone and "He asked Mr. Stimmel if he go in on 100,000 shares of Crow's Nest with me." Bruck further testified: "I tried to raise money but couldn't, so then it was the week in July—on Friday same week, the 22nd, so Mr. Kendall and Mr. Melson came to my house and Mr. Melson offered me to sell 100,000 shares if I agree to mortgage my property for $3,000"; also that negotiations resulted in an agreement that he should purchase from Melson 110,000 shares of the stock for which he was to pay, and he paid, $25 in cash, and was to give, and he gave, a mortgage on his property for $3,000; that it was agreed the stock should be kept by Ben Stimmel in escrow for six months; that this was requested because to put so much stock on the market would bring the price down. He further testified: "I had signed a contract that Mr. Stimmel was to keep them in escrow for six months"; also that he did not have the contract and, in answer to a question as to what its substance was, replied: "That Mr.

Stimmel keep the stock in escrow for six months, until the 22nd of January, 1933. And after I had signed the mortgage papers Mr. Melson asked me, 'you know I never deal in oil stock, would you mind if I deal them to Mr. Stimmel because he keep them in escrow for six months. He knows all about them and he would handle the whole deal.' I see nothing wrong with that as long as I get the shares after it is out of escrow.''

Bruck's testimony further shows 70,000 shares of Crow's Nest Oil Company stock were delivered to him in August, 1932; that he kept it until he had received 110,000 shares, in February or March, 1933, when he delivered it all to Stimmel who told him the company was undergoing reorganization and that he, Stimmel, was sending to the corporation, at Vancouver, B. C., a large number of shares of stock belonging to others to have it reissued by the reorganized company, and suggested that Bruck permit him to send his stock also; that thereupon he delivered to Stimmel the 110,000 shares of stock for that purpose and has never received it nor anything for it. With respect to this transaction the trial judge found:

''The Court further finds that as consideration for the said note and mortgage the defendants were to receive 110,000 shares of the Crow's Nest Oil Company stock, and that the defendants received the full 110,000 shares and the defendants admitted that at least 75,000 shares of said stock were regularly transferred to the name of the defendants and the evidence is insufficient to prove that the remainder of such 110,000 shares was not regularly endorsed to the defendants at the time it was delivered to them and the Court therefore finds that the full consideration for the execution and delivery of the note and mortgage involved in this action, was fully paid to and received by the defendant.

''The Court further finds that subsequent to the execution and delivery of the mortgage and the payment of the consideration therefor, the Crow's Nest Oil Company became involved in financial difficulties and some program of reorganization was being worked out — that the defendants entered into other and subsequent transactions relative to the stock and the evidence is not sufficient for the Court to find what

disposition was finally made of the stock which was originally delivered to the defendants in consideration of the note and mortgage involved herein.''

Appellants complain that these findings are not supported by the proof and insist the evidence is sufficient to establish fraud in procuring the note and mortgage. We have not recited all the testimony given in support of appellants' contention, but enough of it to show the theory on which the defense is based.

The evidence shows Bruck received and had in his possession the 110,000 shares of stock for which he and his wife gave their note and mortgage. Part of this stock was issued in his name and whether the rest of it was so indorsed, when he had possession of it, that it might be surrendered and other stock issued in lieu of it is not satisfactorily shown. The testimony of Bruck that he delivered the stock to Stimmel to be sent to the home office of the corporation for exchange for stock to be issued after reorganization, is undisputed. There is no evidence showing, or tending to show, what became of the stock after it was delivered to Stimmel, except the testimony of Bruck that he never saw it again.

Even if we should find the evidence sufficient to establish that Stimmel represented Melson in this transaction, we have no right to assume he did not send the stock to the company for the purpose of having it reissued to Bruck. Upon this point the record is silent, and no effort appears to have been made to learn whether he did so send it and, if so, what became of it. The evidence is not sufficient to establish fraud.

In *Crumpacker v. Bank of Washington Co.*, 38 Ida. 534, 538, 223 Pac. 229, 230, this court quoted from *Kerns v. Washington Water Power Co.*, 24 Ida. 525, 538, 135 Pac. 70, 74, as follows:

''The correct rule as to the evidence in a case of this kind and character is as follows: 'Fraud is never presumed, but must be proved by clear and satisfactory evidence by the party asserting it; and if the facts and circumstances from which the alleged fraud is supposed to arise may reasonably

consist with honest intentions, it will not be imputed.' (*Allen v. Riddle*, 141 Ala. 621, 37 So. 680.)''

That rule applies to this case.  (See, also, *Nelson v. Hudgel*, 23 Ida. 327, 130 Pac. 85; *Parker v. Herron*, 30 Ida. 327, 164 Pac. 1013; *Fehr v. Haworth*, 33 Ida. 96, 190 Pac. 248; *County of Nez Perce v. Woelflen*, 46 Ida. 682, 270 Pac. 617.)

The decree is affirmed.   Costs are awarded to respondents.

Holden, Ailshie, Budge and Givens, JJ., concur.